# NEW YORK *ex rel.* SILZ *v.* HESTERBERG, SHERIFF OF KINGS COUNTY.

## ERROR TO THE SUPREME COURT OF THE STATE OF NEW YORK.

No. 206.   Argued October 12, 1908.—Decided November 2, 1908.

Subject to constitutional limitations, the legislature of a State may pass measures for the protection of the people in the exercise of the police power and is the judge of their necessity and expediency.

It is within the police power of a State to prohibit possession of game during the closed season even if brought from without the State.

A police measure otherwise within the constitutional power of the State will not be held unconstitutional under the commerce clause of the Federal Constitution because it incidentally and remotely affects interstate commerce.   *Plumley* v. *Massachusetts,* 155 U. S. 461, followed; *Schollenberger* v. *Pennsylvania,* 171 U. S. 1, distinguished.

The sections of the Forest, Fish and Game Law of the State of New York which prohibit possession of game during the closed season, are a valid exercise of the police power of the State and are not in conflict with the Constitution of the United States, either as depriving persons importing game of their property without due process of law, or as an interference with, or a regulation of, interstate commerce. *Geer* v. *Connecticut,* 161 U. S. 519.

Independently of the Lacey Act of May 25, 1900, c. 553, 31 Stat. 187, relating to transportation of game in interstate commerce, the provisions of the New York Forest, Fish and Game Law prohibiting possession of game in closed season is a valid exercise of the police power of the State; and *quære,* but not decided, whether the New York law is not also validated by such act of Congress.[1]

184 N. Y. 126, affirmed.

THE facts which involve the constitutionality of the sections of the Forest, Fish and Game Law of the State of New

---

[1] The Court of Appeals of New York, 184 N. Y. 126, held that the Lacey Act relieved the regulation from the objection that it was unconstitutional as an interference with interstate commerce within the principles upon which the Wilson Act was sustained by this court in *In re Rahrer,* 140 U. S. 545.

York of 1900, relating to the possession of game or fish during the closed season, are stated in the opinion.

Mr. Edward R. Finch and Mr. John Burlinson Coleman for plaintiff in error:

The provisions of the Forest, Fish and Game Law are unconstitutional, in that they deprive the individual of his liberty and property without due process of law.

A State may impose its conditions upon which its game may be captured, and no one who takes the privilege can question the conditions; when, however, game is obtained outside of the State and is brought into it as private property, this rule does not apply. The owner does not get his right to the game from the State; he holds it independently of the State, and is the absolute, unqualified owner of the property, which is protected by the Constitution, and is just as sacred from encroachment from the State as from others. The State may regulate its use, so that public health, morals and safety shall not suffer therefrom, or the citizen be defrauded thereby, but it cannot prohibit its mere possession or make him a criminal because he is able to own it.

It is sometimes assumed that because the State can prohibit the possession of state game during the close season, it can prohibit the possession of game coming from outside the State, but the right to the one is derived from the State and the title is conditional, while as to the other the title is absolute and unconditional, and it is property in every sense of the word. So long as it remains wholesome, and a valuable article of food, the property is sacred, and no person, not even the State, can question its possession or proper use.

Nor is this met by § 141 of the Forest, Fish and Game Law providing a method by which game imported by a citizen and possessed by him at the commencement of the close season can be lawfully kept by him until the next open season upon giving a bond. Deprivation of property without due process of law still exists, for the possessor of property is en-

titled to its beneficial use and free enjoyment which cannot be directly or indirectly affected except by due process of law. *Foster* v. *Scott*, 136 N. Y. 577.

The Forest, Fish and Game Law, containing, as it does, the drastic and severe penalties, attempted to be levied on the possessors of foreign game within the State of New York, is not a proper and reasonable exercise of the police power of the State, and therefore is not in that way taken without the prohibition of the Federal Constitution against depriving the individual of his liberty or property without due process of law. *Dobbins* v. *Los Angeles*, 195 U. S. 223, 236; *Lawton* v. *Steele*, 152 U. S. 133, 137; *Holden* v. *Hardy*, 169 U. S. 366, 398; *Connolly* v. *Union Sewer Pipe Co.*, 184 U. S. 540, 558; *Mugler* v. *Kansas*, 123 U. S. 623, 661; *Lochner* v. *New York*, 198 U. S. 45.

The authorities do not tend to support the statement in the opinion of the Court of Appeals that in England and many of the States of this country legislation prohibiting the possession of foreign game during the close season has been upheld as being necessary to the protection of domestic game, on the ground that without such inhibition or restriction any law for the protection of domestic game could be successfully evaded.

The English case of *Whitehead* v. *Smithers*, L. R. 2 Common Pleas Division, 553, which Judge Cullen cites in support of the statement, has been overruled by the case of *Guyer* v. *The Queen*, decided April 13, 1889, in the Queen's Bench Division, High Court of Justice, and reported in English Law Reports, 23 Q. B. Div. 106. And see, in opposition to the doctrine contended for by Judge Cullen and cases cited by him, *Territory* v. *Evans*, 2 Idaho, 658; *Kansas* v. *Saunders*, 19 Kansas, 127; *Commonwealth* v. *Wilkinson*, 139 Pa. St. 304; *Commonwealth* v. *Hall*, 128 Massachusetts, 410; *People* v. *O'Neill*, 71 Michigan, 325; *In re Davenport*, 102 Fed. Rep. 540; *People* v. *Buffalo Fish Co.*, 164 N. Y. 93; *Commonwealth* v. *Paul*, 148 Pa. St. 559, 562; *Allen* v. *Young*, 76 Maine, 80;

*State* v. *Bucknam*, 88 Maine, 385, 392; *Dickhaut* v. *State*, 85 Maryland, 451; *Davis* v. *McNair* (June, 1885, Canada), 7 Crim. L. Mag. 213; *S. C.*, 21 Cent. L. J. 480; *State* v. *McGuire*, 24 Oregon, 366.

The provisions of the Forest, Fish and Game Law are unconstitutional in that they unjustifiably restrict and interfere with foreign commerce. *Bowman* v. *Chicago Ry. Co.*, 125 U. S. 465; *Leisy* v. *Hardin*, 135 U. S. 100; *In re Rahrer*, 140 U. S. 545; *Rhodes* v. *Iowa*, 170 U. S. 412; *Vance* v. *Vandercook*, 170 U. S. 438.

The provisions of the Forest, Fish and Game Law, making the possession of a pure and wholesome article of food, such as was the imported game in the case at bar, a crime, are not within the police power of the State, and in that way taken without the operation of the commerce clause of the Federal Constitution. *Mugler* v. *Kansas*, 123 U. S. 623, 661; *Dobbins* v. *Los Angeles*, 195 U. S. 223, 236; *Lawton* v. *Steele*, 152 U. S. 133, 137; *Holden* v. *Hardy*, 169 U. S. 366, 398; *Connolly* v. *Union Sewer Pipe Co.*, 184 U. S. 540, 558; *Lochner* v. *State of New York*, 198 U. S. 45, 53; Tiedeman on Limitations of Police Power, 4; *Brown* v. *Maryland*, 12 Wheat. 419; *Schollenberger* v. *Pennsylvania*, 171 U. S. 1; *Minnesota* v. *Barber*, 136 U. S. 313; *Brimmer* v. *Redman*, 138 U. S. 78; *Scott* v. *Donald*, 165 U. S. 58; *Railroad Co.* v. *Husen*, 95 U. S. 465.

*Mr. James A. Donnelly*, Deputy Attorney General of the State of New York, with whom *Mr. William Schuyler Jackson*, Attorney General of the State of New York, was on the brief, for defendant in error:

Traffic in game birds is not governed by the rules which affect ordinary articles of commerce, for the reason that what property may be acquired in them is so peculiarly a matter of state regulation that their possession is controlled by rules entirely different from those which apply to general articles of merchandise.

The right of the individual to acquire property in game birds must yield to the superior authority of the State to restrict their use and possession.

Laws passed for the protection of game do not interfere with private property.

Each State has the right to enact such laws for the protection of its game as to it shall seem best for the accomplishment of that purpose, and the methods observed by the state legislature for the protection of game are necessarily within its discretion.

A state statute prohibiting the possession of game during certain seasons, from whatever source derived, is a reasonable method of protecting the domestic game of the State making the prohibition.

Game can only be the subject of ownership in a qualified way and can never be the subject of commerce except with the consent of the State and subject to the conditions which it may deem best for the public good.

The New York Forest, Fish and Game Law is not a regulation of commerce within the meaning of the Federal Constitution; and the argument that its enactment was in violation of the powers confided exclusively to Congress fails. Case below, 184 N. Y. 135, 136; *People* v. *Bootman*, 180 N. Y. 1; *People* v. *O'Neil*, 110 Michigan, 324; *State* v. *Randolph*, 1 Mo. App. 15; *Stevens* v. *State*, 89 Maryland, 669; *State* v. *Schuman*, 58 Pac. Rep. 661; *Ex parte Maier*, 103 California, 479; *Magner* v. *People*, 97 Illinois, 331; *Merritt* v. *The People*, 48 N. E. Rep. 325; *Whitehead* v. *Smithers*, 2 Com. Pleas Div. 553; *Phelps* v. *Racey*, 60 N. Y. 10; *People* v. *Buffalo Fish Co.*, 164 N. Y. 93; *Geer* v. *Connecticut*, 161 U. S. 517, and cases cited.

Mr. JUSTICE DAY delivered the opinion of the court.

This case comes to this court because of the alleged invalidity, under the Constitution of the United States, of certain sections of the game laws of the State of New York.

Section 106 of chap. 20 of the Laws of 1900 of the State of New York provides:

"Grouse and quail shall not be taken from January first to October thirty-first both inclusive. Woodcock shall not be taken from January first to July thirty-first both inclusive. Such birds shall not be possessed in their closed season except in the city of New York, where they may be possessed during the open season in the State at large."

Section 25 of the law provides:

"The close season for grouse shall be from December first to September fifteenth, both inclusive." As amended by § 2, chap. 317, Laws of 1902.

Section 140 of the law provides:

"Grouse includes ruffed grouse, partridge and every member of the grouse family."

Section 108 of the law provides:

"Plover, curlew, jacksnipe, Wilsons, commonly known as English snipe, yellow legs, killdeer, willet snipe, dowitcher, shortnecks, rail, sandpiper, baysnipe, surf snipe, winter snipe, ringnecks and oxeyes shall not be taken or possessed from January first to July fifteenth both inclusive." As amended by § 2, chap. 588, Laws 1904.

Section 141 of the law provides:

"Whenever in this act the possession of fish or game, or the flesh of any animal, bird or fish is prohibited, reference is had equally to such fish, game or flesh coming from without the State as to that taken within the State. *Provided, nevertheless,* That if there be any open season therefor, any dealer therein, if he has given the bond herein provided for, may hold during the close season such part of his stock as he has on hand undisposed of at the opening of such close season. Said bond shall be to the people of the State, conditioned that such dealer will not during the close season ensuing, sell, use, give away, or otherwise dispose of any fish, game, or the flesh of any animal, bird or fish which he is permitted to possess during the close season by this section; that he

will not in any way during the time said bond is in force violate any provision of the forest, fish and game law; the bond may also contain such other provisions as to the inspection of the fish and game possessed as the commission shall require, and shall be subject to the approval of the commission as to amount and form thereof, and the sufficiency of sureties. But no presumption that the possession of fish or game or the flesh of any animal, bird or fish is lawfully possessed under the provisions of this section shall arise until it affirmatively appears that the provisions thereof have been complied with." Added by chap. 194, Laws of 1902.

Section 119 of the law makes a violation of its provisions a misdemeanor, and subjects the offending parties to a fine. The relator, a dealer in imported game, was arrested for unlawfully having in his possession, on the thirtieth of March, 1905, being within the closed season in the borough of Brooklyn, city of New York, one dead body of a bird known as the golden plover, and one dead body of an imported grouse, known in England as blackcock, and taken in Russia. The relator filed a petition for a writ of *habeas corpus* to be relieved from arrest, and upon hearing before a justice of the Supreme Court of the State of New York the writ was dismissed, and the relator remanded to the custody of the sheriff. Upon appeal to the Appellate Division of the Supreme Court of the State of New York this order was reversed and the relator discharged from custody. The judgment of the Appellate Division was reversed in the Court of Appeals of the State of New York. *Sub nomine People ex rel. Hill* v. *Hesterberg,* 184 N. Y. 126. Upon remittitur to the Supreme Court of the State of New York from the Court of Appeals the final order and judgment of the Court of Appeals was made the final order and judgment of the Supreme Court, and a writ of error brings the case here for review.

The alleged errors relied upon by the plaintiff in error for reversal of the judgment below are: First, that the provisions of the game law in question are contrary to the Fourteenth

Amendment of the Constitution of the United States, in that they deprive the relator, and others similarly situated, of their liberty and property without due process of law. Second, that the provisions of the law contravene the Constitution of the United States, in that they are an unjustifiable interference with and regulation of interstate and foreign commerce, placed under the exclusive control of Congress by § 8, Art. 1, of the Federal Constitution. Third, that the court below erred in construing the act of Congress, commonly known as the Lacey Act, 1900, c. 553, 31 Stat. 187, which relates to the transportation in interstate commerce of game killed in violation of local laws. Act of May 25, 1900, ch. 553, 31 Stat. 187.

The complaint discloses that the relator, August Silz, a dealer in imported game, had in his possession in the city of New York one imported golden plover, lawfully taken, killed and captured in England during the open season for such game birds there, and thereafter sold and consigned to Silz in the city of New York by a dealer in game in the city of London. He likewise had in his possession the body of one imported blackcock, a member of the grouse family, which was lawfully taken, killed and captured in Russia during the open season for such game there, and thereafter sold and consigned to Silz in New York City by the same dealer in London. Such birds were imported by Silz, in accordance with the provisions of the tariff laws and regulations in force, during the open season for grouse and plover in New York. Such imported golden plover and imported blackcock are different varieties of game birds from birds known as plover and grouse in the State of New York; they are different in form, size, color and markings from the game birds known as plover and grouse in the State of New York, and can be readily distinguished from the plover and grouse found in that State. And this is true when they are cooked and ready for the table. The birds were sound, wholesome and valuable articles of food, and recognized as articles of commerce in

different, countries of Europe and in the United States. These statements of the complaint are the most favorable possible to the relator, and gave rise to the comment in the opinion in the Court of Appeals that the case was possibly collusive. That court nevertheless proceeded to consider the case on the facts submitted and a similar course will be pursued here. While the birds mentioned, imported from abroad, may be distinguished from native birds, they are nevertheless of the families within the terms of the statute, and the possession of which, during the closed season, is prohibited.·

As to, the first contention, that the laws in question are void within the meaning of the Fourteenth Amendment because they do not constitute due process of law. The acts in question were passed in the exercise of the police power of the State with a clear view to protect the game supply for the use of the inhabitants of the State. It is not disputed that this is a well-recognized and often-exerted power of the State and necessary to the protection of the supply of game which would otherwise be rapidly depleted, and which, in spite of laws passed for its protection, is rapidly disappearing from many portions of the country.

But it is contended that while the protection of the game supply is within the well-settled boundaries of the police power of a State, that the law in question is an unreasonable and arbitrary exercise of that power. That the legislature of the State is not the final judge of the limitations of the police power, and that such enactments are subject to the scrutiny of the courts and will be set aside when found to be unwarranted and arbitrary interferences with rights protected by the Constitution in, carrying on a lawful business or making contracts for the use and enjoyment of property, is well settled by former decisions of this court. ·Lawton v. Steele, 152 U. S. 133, 137; Holden v. Hardy, 169 U. S. 366; Dobbins v. Los Angeles, 195 U. S. ·233, 236. ·

It is contended, in this connection, that the protection of the game of the State does not require that a penalty be im- ·

posed for the possession out of season of imported game of the kind held by the relator. It is insisted that a method of inspection can be established which will distinguish the imported game from that of the domestic variety, an' prevent confusion in its handling and selling. That such game can be distinguished from domestic game has been disclosed in the record in this case, and it may be that such inspection laws would be all that would be required for the protection of domestic game. But, subject to constitutional limitations, the legislature of the State is authorized to pass measures for the protection of the people of the State in the exercise of the police power, and is itself the judge of the necessity or expediency of the means adopted. In order to protect local game during the closed season it has been found expedient to make possession of all such game during that time, whether taken within or without the State, a misdemeanor. In other States of the Union such laws have been deemed essential, and have been sustained by the courts. *Roth* v. *State,* 51 Ohio St. 209; *Ex parte Maier,* 103 California, 476; *Stevens* v. *The State,* 89 Maryland, 669; *Magner* v. *The People,* 97 Illinois, 320. It has been provided that the possession of certain kinds of game during the closed season shall be prohibited, owing to the possibility that dealers in game may sell birds of the domestic kind under the claim that they were taken in another State or country. The object of such laws is not to affect the legality of the taking of game in other States, but to protect the local game in the interest of the food supply of the people of the State. We cannot say that such purpose, frequently recognized and acted upon, is an abuse of the police power of the State, and as such to be declared void because contrary to the Fourteenth Amendment of the Constitution.

It is next contended that the law is an attempt to unlawfully regulate foreign commerce which, by the Constitution of the United States, is placed wholly within the control of the Federal Congress. That a State may not pass laws directly regulat-

ing foreign or interstate commerce has frequently been held in the decisions of this court. But while this is true, it has also been held in repeated instances that laws passed by the States in the exertion of their police power, not in conflict with laws of Congress upon the same subject, and indirectly or remotely affecting interstate commerce, are nevertheless valid laws. *M., K. & T. Ry. Co.* v. *Haber,* 169 U. S. 613; *Pennsylvania Co.* v. *Hughes,* 191 U. S. 477; *Asbell* v. *Kansas,* 209 U. S. 251.

In the case of *Geer* v. *Connecticut,* 161 U. S. 519, the plaintiff in error was convicted for having in his possession game birds killed within the State, with the intent to procure transportation of the same beyond the state limits. It was contended that this statute was a direct attempt by the State to regulate commerce between the States. It was held that the game of the State was peculiarly subject to the power of the State which might control its ownership for the common benefit of the people, and that it was within the power of the State to prohibit the transportation of game killed within its limits beyond the State, such authority being embraced in the right of the State to confine the use of such game to the people of the State. After a discussion of the peculiar nature of such property and the power of the State over it, Mr. Justice White, who delivered the opinion of the court in that case, said, p. 534:

"Aside from the authority of the State, derived from the common ownership of game and the trust for the benefit of its people which the State exercises in relation thereto, there is another view of the power of the State in regard to the property in game, which is equally conclusive. The right to preserve game flows from the undoubted existence in the State of a police power to that end, which may be none the less efficiently called into play, because by doing so interstate commerce may be remotely and indirectly affected. *Kidd* v. *Pearson,* 128 U. S. 1; *Hall* v. *De Cuir,* 95 U. S. 485; *Sherlock* v. *Alling,* 93 U. S. 99, 103; *Gibbons* v. *Ogden,* 9 Wheat. 1. Indeed, the source of the police power as to game birds

(like those covered by the statute here called in question) flows from the duty of the State to preserve for its people a valuable food supply. *Phelps* v. *Racey,* 60 N. Y. 10; *Ex parte Maier,* 103 California, 476; *Magner* v. *The People,* 97 Illinois, 320, and the cases there cited. The exercise by the State of such power therefore comes directly within the principle of *Plumley* v. *Massachusetts,* 155 U. S. 461, 473. The power of a State to protect by adequate police regulation its people against the adulteration of articles of food, (which was in that case maintained), although in doing so commerce might be remotely affected, necessarily carries with it the existence of a like power to preserve a food supply which belongs in common to all the people of the State, which can only become the subject of ownership in a qualified way, and which can never be the object of commerce except with the consent of the State and subject to the conditions which it may deem best to impose for the public good."

In the case of *Plumley* v. *Massachusetts,* referred to in the opinion just cited, 155 U. S. 461, 473, it was held that a law of the State of Massachusetts which prevented the sale of oleomargarine colored in imitation of butter was a legal exertion of police power on the part of the State, although oleomargarine was a wholesome article of food transported from another State, and this upon the principle that the Constitution did not intend, in conferring upon Congress an exclusive power to regulate interstate commerce, to take from the States the right to make reasonable laws concerning the health, life and safety of its citizens, although such legislation might indirectly affect foreign or interstate commerce, and the general statement in *Sherlock* v. *Alling,* 93 U. S. 99, 103, was quoted with approval: "And it may be said generally, that the legislation of a State, not directed against commerce or any of its regulations, but relating to the rights, duties and liabilities of citizens, and only indirectly and remotely affecting the operations of commerce, is of obligatory force upon citizens within its territorial jurisdiction, whether on land or water,

or engaged in commerce, foreign or interstate, or in any other pursuit."

It is true that in the case of *Schollenberger* v. *Pennsylvania,* 171 U. S. 1, it was held that a state law (act No. 25 of May 21, 1885, Laws, p. 22) directly prohibiting the introduction in interstate commerce of a healthful commodity for the purpose of thereby preventing the traffic in adulterated and injurious articles within the State, was not a legitimate exercise of the police power. But in that case there was a direct, and it was held unlawful, interference with interstate commerce as such. In the case at bar the interference with foreign commerce is only incidental and not the direct purpose of the enactment for the protection of the food supply and the domestic game of the State.

It is provided in the New York statutes that game shall be taken only during certain seasons of the year, and to make this provision effectual it is further provided that the prohibited game shall not be possessed within the State during such times, and owing to the likelihood of fraud and deceit in the handling of such game the possession of game of the classes named is likewise prohibited, whether it is killed within or without the State. Such game may be legally imported during the open season, and held and possessed within the State of New York, It may be legally held in the closed season upon giving bond as provided by the statute against its sale. Incidentally, these provisions may affect the right of one importing game to hold and dispose of it in the closed season, but the effect is only incidental. The purpose of the law is not to regulate interstate commerce, but by laws alike applicable to foreign and domestic game to protect the people of the State in the right to use and enjoy the game of the State.

The New York Court of Appeals further held that the so-called Lacey Act (31 Stat. 187) [1] relieved the regulation of the objection in question because of the consent of Congress to

---

[1] The object and purpose of this act, as stated in § 1 thereof, is to aid in the restoration of such birds in those parts of the United States adapted thereto, where the same have become scarce or extinct,

the passage of such laws concerning such commerce, inter-
state and foreign, within the principles upon which the Wilson
Act [1] was sustained by this court. *In re Rahrer,* 140 U. S. 545.

In the aspect in which the game law of New York is now
before this court we think it was a valid exertion of the police
power, independent of any authorization thereof by the Lacey
Act, and we shall therefore not stop to examine the provisions
of that act. For the reasons stated, we think the legislature,
in the particulars in which the statute is here complained of,
did not exceed the police power of the State nor run counter
to the protection afforded the citizens of the State by the
Constitution of the United States.

*Judgment affirmed.*

---

and also to regulate the introduction of American or foreign birds or
animals in localities where they have not heretofore existed.

Section 5 of the act is as follows:

"That all dead bodies, or parts thereof, of any foreign game animals,
or game or song birds, the importation of which is prohibited, or the
dead bodies, or parts thereof, of any wild game animals, or game or
song birds transported into any State or Territory, or remaining therein
for use, consumption, sale or storage therein, shall upon arrival in such
State or Territory be subject to the operation and effect of the laws
of such State or Territory enacted in the exercise of its police powers,
to the same extent and in the same manner as though such animals or
birds had been produced in such State or Territory; and shall not be
exempt therefrom by reason of being introduced therein in the original
package or otherwise. This act shall not prevent the importation,
transportation, or sale of birds or bird plumage manufactured from the
feathers of barnyard fowls."

[1] Act of August 8, 1890, c. 728, 26 Stat. 313, which enacted, "That
all fermented, distilled, or other intoxicating liquors or liquids trans-
ported into any State or Territory or remaining therein for use, con-
sumption, sale or storage therein, shall upon arrival in such State or
Territory be subject to the operation and effect of the laws of such
State or Territory enacted in the exercise of its police powers, to the
same extent and in the same manner as though such liquids or liquors
had been produced in such State or Territory, and shall not be exempt
therefrom by reason of being introduced therein in original packages
or otherwise."