## AS TO THE SALE OF PLUMAGE OF THE WHITE HERON.

Common Pleas Court of Cuyahoga County.

### A. M. SOLOMON v. STATE OF OHIO.

Decided, June 21, 1911.

*Classification of Birds—Construction of the Phrase "Any Wild Bird"—White Heron No Longer a Game Bird—Plumage of White Heron May Be Offered for Sale—What Birds are Protected—Sections 1409 and 1412.*

1. The phrase "any wild bird" as used in Section 1409, General Code, as amended, means any wild bird native of Ohio and also migratory birds which cross the state at regular intervals.

2. The white heron is a wild bird, but not a game bird under the amended statute; it does not have its habitat in Ohio, and is never seen here, unless it be a vagrant specimen at rare intervals, and it is therefore not protected by the statute, and to have its plumage for sale is not a violation of law.

3. A construction of Section 1409 which would make it prohibit the sale or having in possession for sale plumage of the white heron would render the statute unconstitutional in that it would be in violation of the Fourteenth Amendment of the Federal Constitution.

ESTEP, J.

This case comes into this court on error from the docket of Myron J. Penty, one of the justices of the peace in and for Corlett township in this county. The substance of the charge is as follows:

"That he, the said A. M. Solomon, did, on or about the 8th day of April, 1911, at the county of Cuyahoga and state of Ohio, unlawfully, purposely and willfully then and there have in his possession for sale the plumage of a wild bird other than a game bird, to-wit, a white heron, contrary to the form of the statute in such case made and provided."

A motion to quash and a demurrer were filed to said charge, which were overruled by the justice of the peace, to which rulings exceptions were noticed by the plaintiff in error.

The defendant in the court below thereupon entered a plea of not guilty, and a trial was had, the said defendant being convicted.

It was stipulated at the trial, both upon the motion to quash and upon the hearing of the case upon its merits; that the white heron had been seen in certain counties in Ohio; that its appearance in these counties has been regarded as practically accidental. It was further stipulated that the white heron is a rare and irregular summer visitor, and that only six specimens of the bird have been seen in Ohio in the past forty years, and that no individual of the species has been seen in this state in the past six years.

The testimony of Francis H. Herrick, he being the only witness examined at the trial, was to the effect that the birds named in Section 1409 of the General Code of Ohio have a residence during some portion of the year in Ohio.

At the trial the defendant admitted that at the time stated in the affidavit he had the plumage of a white heron in his possession, and that he offered it for sale in this city, county and state. He further admitted that the white heron was a wild bird, and not a game bird.

A case somewhat similar to the case at bar was tried in Stark County Common Pleas Court. It is known as *Abt* v. *State of Ohio*, reported in 9 N.P. (N.S.), 311. This case was affirmed by the circuit court and by the Supreme Court without report. Since the decision of that case, Section 1412 of the General Code has been amended so that the white heron can not be classified as a game bird.

The first question raised by the plaintiff in error relates to the construction of the language "any wild bird," as contained in Section 1409 of the General Code. It is clear, under the stipulation, that the white heron does not have its habitat in Ohio, and that it is a rare and irregular visitor.

The circuit court, in the case of *Abt* v. *State of Ohio*, above referred to, among other things said:

"It also fully appears from the evidence in this case that the snowy heron is not a native bird of Ohio; that it is a habitant of southern waters, and is never seen in a wild state in Ohio, except

very rarely; so that, if found in the state at all, it is only as a vagrant individual of the species, and is not a native bird.   We think these statutes are intended to protect the native birds and migratory birds that cross the states at regular intervals each year; and not merely a transient or vagrant individual of the class whose habits are not to migrate to this state or across it.''

The language used by the circuit court above quoted applies to the case at bar, and I follow it in its entirety.

It is contended by the plaintiff in error that, under the rules of statutory construction, the words ''any wild bird'' means any wild bird a native of Ohio or migratory birds which cross the state at regular intervals.

I am of the opinion that this is the proper construction to place on this language as used in Section 1409 of the General Code. Under the evidence in the case, I am of the opinion that the white heron is not covered by this statute, and that the plaintiff in error was not violating any law of this state in having the plumage of the white heron in his possession for sale.

The following authorities bear upon this construction of the statute; *May on Crimes*, Section 39; *Schultz* v. *Cambridge*, 38 O. S., 659; *Lane* v. *State*, 39 O. S., 312; *36 Cyc.*, 1119.

I might add that since the decision of *Abt* v. *State* by the Supreme Court, the case is not authority in so far as it relates to the classification of the white heron with game birds, but upon the ground upon which I have construed Section 1409, General Code, I regard the decision as binding upon this court.

I am also inclined to agree with plaintiff in error in his contention that if, by the rules of construction, it should be held that Section 1409 prohibits the sale of, or having in possession for sale, the plumage of the white heron, the statute to that extent would be unconstitutonal, and in violation of the Fourteenth Amendment to the Federal Constitution, and Sections 1 and 19 of Article I of the Constitution of the state of Ohio.

I will not enter into an extended discussion of this feature of the case, but will state briefly the conclusion I have come to on this question.

I have already held, on the stipulation and evidence in the case, that the white heron is not a native bird of Ohio; that it is never

seen in a wild state in Ohio, except rarely; and that, when seen, it is only as a vagrant individual of the species. It is conceded by counsel for plaintiff in error that if Section 1409, in its general scope, is limited to the birds mentioned therein, and to other birds native of Ohio, or habitually therein during some portion of the year, it is a valid exercise of the public power.

Laws in many states, making it a penal offense for one to have in his possession, for sale, game purchased from another state during the closed season, have been upheld on the ground that they protect the home supply; and also on the ground that such laws prevent perjury and fraud in the enforcement of the laws which prohibit the killing of game in the closed season.

Justice Day, in the case of *Silz* v. *Hesterberg*, 211 U. S., 40, lays down the principle involved in the case at bar.

There is no home supply of the white heron in Ohio which calls for protection.

Justice Day says:

"The object of such laws is not to affect the legality of the taking of game in the other state, but to protect the local game in the interest of the food supply of the people of the state." See also 51 O. S., 209.

It can not be seriously contended, if Section 1409 is held to include within its terms the white heron, that it was intended to protect the home suppy of the white heron for any purpose, as there is no home supply of the white heron in this state.

If the white heron is to be protected, it should be protected in its native country, and is not, in my opinion, a proper subject for legislation in this state.

Entertaining these views, I reverse the judgment of the court below, and discharge the defendant.

The same entry will be made in the case of *the Bailey Company* v. *the State of Ohio*.