# FEBRUARY, 1915.

### ADAMS FISH MARKET v. W. G. STERRETT.

#### No. 2619.   Decided February 3, 1915.

**1.—License Fee—Fish and Oyster Dealer—Business "Handled."**

The tax upon dealers in fish and oysters, imposed by statute (Rev Stats., 1911, arts. 3987, 3989), based on the quantity of such articles "handled" by the dealer in each month, is to be computed, not only on the amount purchased within the State, but on that bought in other States and brought into and sold within it. The latter transaction can properly be taxed here, though a tax on such properly merely bought elsewhere and brought into the State would be unlawful as constituting a burden upon interstate commerce. (Pp. 563, 564.)

**2.—Same—Mandamus.**

The tax being imposed monthly and upon the quantity handled for each month, respectively, an applicant who had already pursued the business for three months without taking out license or paying the tax, would not be entitled to license, or to mandamus against the State Game, Fish and Oyster Commissioner, requiring him to issue it, without tender of the tax due on the business handled during the months in which it had been pursued. (Mr. Justice Hawkins dissenting.)   (P. 564.)

Original application to the Supreme Court by Mrs. C. P. Adams, doing business under the style of Adams Fish Market, for mandamus against Sterrett, as State Game, Fish and Oyster Commissioner, requiring him to issue license as a dealer.

*Barry Miller* and *Smith, Robertson & Robertson,* for relator.

*B. F. Looney,* Attorney General, and *G. B. Smedley,* Assistant, for respondent.

MR. JUSTICE PHILLIPS delivered the opinion of the court.

The mandamus for which the relator prays will be refused, because it is apparent from her petition that she is not clearly entitled to it; but we shall briefly indicate our views, inasmuch as one of the questions

involved properly calls for an interpretation of a statute governing the administration of an important department of the State government.

It is to be inferred from the petition and answer that during the months of September, October and November, 1913, the relator had been engaged in the wholesale fish and oyster business in the City of Dallas, without the license required by article 3987, Revised Statutes, 1911, or the payment of the tax for such license prescribed by article 3989. On December 19, 1913, she made application to the respondent for a license —whether for one year beginning September 1, 1913, or for one year beginning December 19, 1913, does not appear—subscribing to and presenting the statutory affidavit. She accompanied her application with a due tender of $35.36, being an amount equivalent to the statutory tax upon the quantity of fish "purchased by her within the State of Texas from September 1, 1913, to November 20, 1913, inclusive," namely, $1 for each 1000 pounds upon 35,364 pounds of fish; no oysters having been purchased, as she alleges. The answer of the respondent is that, during the period of time stated, the relator had "handled" in the conduct of her business within the State, 84,484 pounds of fish and 994 barrels of oysters, upon which she was due a tax, according to the statutory rate, of $94.42; and that, because of her failure to pay the proper amount of tax, he had refused to issue the license. There seems to be no controversy between the parties that the quantity of fish representing the difference between that which the respondent claims was "handled" by the relator, and that which she claims was "purchased" by her during the period named, namely, 49,120 pounds, as well as the 994 barrels of oysters, was purchased by her without the State; and an agreed issue between them is whether the tax may be lawfully computed upon such purchases.

(1)   The statute (article 3989, as amended by Laws, 1913, chap. 146) fixes the tax for the license at "one dollar for each thousand pounds of fish, and one cent per barrel of oysters, handled by the dealer," payable monthly. The term "handled," as made use of in the statute, can not, by mere construction, be given the restricted meaning for which the relator contends. Fish and oysters sold within the State, though originally purchased out of it, so as to constitute, in their purchase, articles of interstate commerce, would certainly be considered as commodities "handled" within the lawful intendment of the statute. The term very plainly has reference to the quantity of fish and oysters dealt in, or passing through the hands of the dealer, in the ordinary conduct of his business; and those sold within the State are as equally "handled" within the State as those purchased.

(2)   In our opinion the tax may not be lawfully computed upon "the quantity purchased without the State." It is, of course, true that articles of merchandise brought from another State, at rest within the State and enjoying the protection of its laws, are taxable, like other property there situated. American Steel & Wire Co. v. Speed, 192 U. S., 500, 24 Sup. Ct., 365, 48 L. Ed., 538. But a tax computed upon the quantity of merchandise purchased from

dealers in another State to be transported within the State amounts, practically, to a tax upon the purchase—that which essentially gives the transaction its character as commerce—since, in such case, the amount of the purchase becomes the measure of the tax, and would therefore constitute a burden upon interstate commerce, which it is without the power of the State to impose. G., H. & S. A. Ry. Co. v. State of Texas, 210 U. S., 217, 28 Sup. Ct., 638, 52 L. Ed., 1031.

The proper measure of the tax according to the statute is, in our opinion, the quantity of fish and oysters purchased within the State, and, in addition the quantity sold within the State of any amount acquired from without it. In this way the quantity "handled" within the State may be fairly computed, and is made the subject of the tax laid by the statute.

(3) It not being shown by the relator that she had not sold any of the fish and oysters purchased by her without the State, the amount of the tax, computed only upon the purchases within the State, was insufficient, and upon this ground alone the respondent would have been justified in refusing to issue the license.

(4) She was not entitled to the license without the payment of the proper tax due for the period named. It is plain that she had pursued the business throughout this period. The statute very clearly contemplates the payment of the tax for each month the business is pursued. The relator does not contend to the contrary. The issue she makes is with respect to the proper amount of the tax. It would defeat the manifest purpose of the law, and contravene its terms, in our judgment, if a dealer, having pursued the business from September to December, should wait until, say, December 19th, to apply for the license, and then, while in clear default for the three preceding months, be held entitled to a license for the year following. By this method payment of the tax could be altogether avoided by refusing to apply for the license.

The mandamus is refused, but upon payment of the proper amount, as we have indicated, and making the deposit provided by article 3990, the license should be issued.

MR. JUSTICE HAWKINS dissenting.

Relator, Mrs. C. P. Adams, a feme sole, doing business under the name of "Adams Fish Market," filed here a petition for a writ of mandamus to compel respondent, W. G. Sterrett, Game, Fish, and Oyster Commissioner of the State of Texas, to issue to her a wholesale dealer's license to sell fish and oysters. Respondent answered.

From the pleadings it appears that during the period of time beginning with September 1, 1913, and ending with November 30, 1913, relator was engaged, and is yet engaged, in the business of a wholesale dealer in fish and oysters in the City of Dallas, Texas, without license. Between said dates she "handled," in the State of Texas, 84,484 pounds of fish and 994 barrels, or 1998 gallons, of oysters; 35,364 pounds of said fish and no oysters having been purchased by relator within the

State of Texas during said period, and all the residue of said fish and all of said oysters having been purchased by her outside of this State during said period. Some lack of certainty as to the source of supply of the oysters and of some of the fish is disclosed by the pleadings. Relator alleges, substantially, that all fish and oysters which she had purchased outside of this State were purchased "in other and different States of the United States of America." The affidavit which is embodied in respondent's answer is, substantially, to the effect that he demanded of relator, as a condition precedent to issuance of such license, payment of a tax under said statute, measured in amount by the total amount of fish and oysters "handled" by relator during said three months, and that she tendered "only the amount of taxes due on the fish and oysters purchased in the State of Texas" during said period. And it was argued at the bar, upon behalf of respondent, that some of the fish so purchased outside of the State of Texas might have been taken and sold to relator directly from the high seas.

Any issue between the parties as to a material fact would be fatal to our jurisdiction herein. However, under my view of this case, at least in its present attitude, it is wholly immaterial whether all or any of the oysters and fish purchased by relator outside of this State were purchased in a sister State, or in some foreign country, or were taken and sold to relator directly from the high seas.

On December 19, 1913, "Adams Fish Market, per H. Schwarz, Manager," made and duly presented to one of respondent's deputies a written application for a wholesale dealer's license to sell fish and oysters. Relator's petition alleges that:

"Said application for said license was then and there in strict compliance with the provisions of article 3988 of the Revised Civil Statutes of the State of Texas of 1911, and in strict compliance with all other provisions of law applicable thereto."

And respondent's answer admits that said application was in proper form and was presented to said deputy.

Along with said application for such license, relator, through said manager, tendered to said deputy the sum of $35.36, only, as the amount of taxes owing by said relator under said statute, upon the business handled by her during said three months, claiming that the amount of the prescribed tax should be calculated upon only the number of pounds of fish, and the number of barrels of oysters, if any, handled by her as such wholesale dealer, which had been purchased by her within the State of Texas, during said period of time. Respondent declined to accept the amount so tendered, and refused to issue such license, basing such declination and refusal upon the sole ground that the amount of taxes owing by relator, under said statute, for said three months, should be calculated upon the number of pounds of fish and the number of barrels of oysters handled by relator in the State of Texas during said period of time, including that which was purchased by her without, as well as that which was purchased by her within, this State. Respondent admits that upon the basis of calculation of the amount of said tax

so contended for by relator the sum so tendered by her was sufficient. Relator likewise concedes that upon the basis of calculation of taxes so contended for by respondent the proper amount of her taxes aforesaid, for said three months, is $94.42.

Both parties have presented the case here, apparently, upon the assumption that payment by relator of the proper amount of all such taxes for said three months should be considered and treated as a condition precedent to issuance of such license. Accordingly, briefs for both parties present widely divergent views, as hereinabove indicated, concerning the nature of the tax and the proper construction of said statute as to the basis of computation of the amount of such tax; and it is also earnestly urged, on behalf of relator, and as strenuously denied, on behalf of respondent, that:

"If the correct interpretation of the statutes be that they require the tax or charge for such wholesale dealer's license to handle fish and oysters to be computed and paid upon a basis of purchase of fish or oysters outside of the State and shipped into the State, then the provisions of such statutes in thus requiring are invalid and utterly void, because:

"(1)   They are contrary to section 10 of article 1, clause 2, of the Constitution of the United States, providing as follows:   'No State shall, without the consent of Congress, lay any impost or duties on imports or exports except what may be absolutely necessary for executing its inspection laws.'

"(2)   They are contrary to clause 3, section 8, of article 1, of the Constitution of the United States, providing as follows:   'Congress shall have the power   .   .   .   to regulate commerce with foreign nations, and among the several States and with the Indian tribes.'

"(3)   They are contrary to subdivision 18, section 8, article 1, of the Constitution of the United States, which provides as follows:   'Congress shall have the power to make all laws which shall be necessary and proper for carrying into execution the foregoing powers and all other powers vested by this Constitution in the government of the United States, and any department or officer thereof.'

"(4)   They are contrary to section 2 of article 6 of the Constitution of the United States, which provides as follows:   'The Constitution and the laws of the United States which shall be made in pursuance thereof, and all treaties made or which shall be made under the authority of the United States, shall be the supreme law of the land, and the judges in every State shall be bound thereby, anything in the Constitution or laws of any State notwithstanding.'

"(5)   They are contrary to the Fourteenth Amendment to the Constitution of the United States."

Under the above mentioned assumption it is clear that if the statute which provides for such tax and such license be constitutional and valid, and the amount so tendered was the proper amount thereunder, the license should have been issued, and relator's petition for mandamus should be granted; but, if said statute, or even those portions thereof

which relate to such license, be unconstitutional, or if the amount so tendered by relator be less than that required by law, the license was properly refused, and the writ of mandamus should be denied.

But I regard that entire assumption as plainly erroneous because it is not justified by said statute.

Whatever questions relative to the nature or to the proper basis for computation of the amount of this prescribed tax, or to the constitutionality of said statute as dependent upon the construction to be given it, at the proper time, in the matter of computation of such tax, may really and properly arise, hereafter, between these parties, or between the relator ond the State of Texas, in some other action, it is obvious, I think, that none of those questions is now before us in such manner or form as to either require or justify a decision thereon in an action to compel issuance of such license.

Relator further contends:

"The provisions of the statutes involved, requiring a license, are unconstitutional and void in that they require that the applicant for license shall be a citizen of the United States, and such requirement is contrary to that part of section 1 of article 14 of the amendments to the Constitution of the United States, reading as follows: 'Nor shall any State deprive any person of life, liberty or property without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws.'"

The reference is to that portion of said statute which authorizes the respondent to require that the application shall aver that the applicant "is a citizen of the United States." Rev. Stats., 1911, art. 3988.

Relator has not alleged that she is an alien, and there is in the entire record no averment that she is not a citizen of the United States within the meaning of said article 3988. A feme sole is included within its terms. State v. County Court, 90 Mo., 593, 2 S. W., 788.

Consequently, the suggested discrimination is not shown to affect relator, unless, as to all persons, it vitiates the entire statute, or, as relator urges, at least so much thereof as relates to a license to engage in the business of wholesale dealer in fish or oysters. An examination of said statutes, as well as of former laws of which said statutes are amendments, forces the conclusion that the aforesaid current statutory provisions relating to such license are merely incidental to the general purpose of the Legislature, which was to protect the game, and the fish and the oyster industry, of this State, and that the other provisions of that statute would have been enacted for the accomplishment of that general and salutary purpose even had the Legislature known that said provisions relating to such license would be held invalid, and that, even had the Legislature known that the provision complained of by relator, which seeks to restrict issuance of such license to only those who are citizens of the United States, would be held invalid, it would, nevertheless, have enacted the aforesaid other current provisions concerning such license. If, and when, the effect of said article 3988 upon the rights of an alien shall be directly drawn in issue before us by one

shown to be an alien, it will become proper and necessary for this court to decide that point.

However, even were relator shown, in this action, to be an alien, and were this court to herein hold said discriminatory feature of said article 3988 unconstitutional (a point which is not now decided), this court should not, for that reason, hold all or any other portion of said statute inoperative, as to her, but, unless their provisions were found to be subject to some other constitutional objection, should simply extend their privileges and burdens to such alien.

Moreover, the only application for license upon which relator's right to the relief prayed for herein is claimed to rest is the application which was signed, sworn to, and filed by her manager, which distinctly states that "he is a citizen of the United States." Respondent, who is primarily charged with the duty of construing and enforcing said statute, treats said application as that of relator, and as being substantially in the form required by law, and I so treat it.

Consequently, I think relator's last mentioned contention should be overruled.

The real issues in this case are limited to those, if any, which actually arise, upon the facts before us, under the provisions of the general laws of this State of the year 1909 (First Extra Sess., chap. 23), and of years prior thereto, relating to the protection of the game, and to the protection of the fish and oyster industry, of this State, and to the duties and powers of the Game, Fish, and Oyster Commissioner, etc., as amended in 1913 (chapter 146, Vernon's Sayles' Ann. Civ. Stat., 1914, articles 3987-3990, 4000); such amendments having taken effect prior to September 1, 1913.

Among those provisions are these:

"Art. 3987. For the better protection of the fish and oyster industry, any person, firm, or corporation engaged in or who may engage in the business of wholesale dealer or dealers in fish or oysters, shall on or before the first day of September of each year secure from the Game, Fish, and Oyster Commissioner, or one of his deputies, a license granting such person, firm or corporation permission to engage in said occupation. A wholesale dealer in the meaning of this Act is one who is engaged in the fish or oyster business as a dealer supplying the wholesale or retail trade by sales of quantities of fifty pounds or more of fish, or oysters in quantities or lots of five barrels or more, provided one who has a license under article 3986 and pays the tax of one-fifth of one per cent per pound on fish caught and sold shall not be considered a wholesale dealer. Provided, that two gallons of shucked oysters shall be considered a barrel of oysters.

"Art. 3988. For the purpose of obtaining a wholesale dealer's license, the applicant desiring same shall make written application to the Game, Fish, and Oyster Commissioner or one of his deputies in which he, the applicant, shall set forth under oath if so required, that he is a citizen of the United States and that he does because of the privilege for which he applies for from the State of Texas, agree that all products bought

or sold or had for sale by him shall at all times be subject to the inspection of the Game, Fish and Oyster Commissioner or any of his deputies, and in said application he shall authorize said Commissioner or any of his deputies to enter his place of business or any place where he may have such product stored and inspect same. He shall also agree to keep a correct record of all purchases made by him under this chapter in a book to be furnished by the Game, Fish and Oyster Commissioner, and he shall further agree that failure on his part to keep a correct record and comply with all provisions of his application shall be grounds for the forfeiture of his license granted him under the application there aforesaid; and provided, further, that the violation of any of the fish and oyster laws of this State or the violation of any of the rules and regulations of the Fish and Oyster Commissioner of this State, shall be and constitute a forfeiture of said license.

"Art. 3989. The application for a wholesale dealer's license having been duly executed and delivered to the Game, Fish and Oyster Commissioner or any of his deputies, together with the fee for same, it shall then be the duty of the Game, Fish and Oyster Commissioner, or his deputy, to pass upon same, and if said application is found to comply with the law and the rules and regulations of the Game, Fish and Oyster Commissioner, a license shall be issued to said applicant permitting such applicant to engage in the business set forth in the application, said license to be signed by the Game, Fish and Oyster Commissioner, or one of his deputies, stamped with the seal of office and state the name of the licensee, place of business and the kind of license applied for and shall be good for twelve months following the date of issuance, and for such license the applicant shall pay a tax of one dollar for each one thousand pounds of fish handled by him and a tax of one cent per barrel of oysters handled by him, which tax shall be paid monthly; the tax to be paid on the first of each month which may be due upon the said products handled during the preceding month, as per the record book hereinbefore mentioned. For the failure or refusal of any licensee to pay said tax, the Game, Fish and Oyster Commissioner, or his deputy, shall have authority and it shall be his duty to cancel such license.

"Art. 3990. The applicant for any license under this act based upon fish and oysters handled, shall, upon the issuance of such license, deposit with the Game, Fish and Oyster Commissioner an amount of money, to be fixed by the said Commissioner, sufficient to cover the estimated amount of tax that would be due by applicant upon the monthly business of applicant, and against which deposit the tax due may be charged by the Commissioner, and said applicant shall make additional deposits in sufficient amounts to at all times maintain a deposit sufficient to cover the estimated tax that may be due by applicant, which additional deposit shall be made upon request of the Game, Fish and Oyster Commissioner."

"Art. 4000. Duties of Commissioner.—It shall be the duty of the Game, Fish and Oyster Commissioner to collect the special tax imposed by this chapter, and enforce its payment, to inspect all products so taxed and verify the weights and measures thereof, to collect all license

fees, to collect all rents on locations for planting oysters, to examine, or have examined, all streams, lakes, or ponds, when requested so to do, for the purpose of stocking such waters with fish, best suited to such location, and he shall procure and furnish such stock fish from the nearest fishery, and at the cheapest rate possible to parties applying for same."

The plain and unequivocal requirement of the statute is that when the application has been duly executed and delivered to the Commissioner or any of his deputies, "together with the fee for same," and has been found to comply with the law and the rules and regulations prescribed by the Commissioner, "a license shall be issued to said applicant," etc.   Article 3989.

I find in said statutes nothing which expressly or by reasonable implication requires or authorizes the Commissioner, or any of his deputies, to demand, as a condition precedent to the issuance of such license, payment of any previously accrued taxes whatever, or payment of any sum of money, except the "fee" for such license (article 3989); and, in making a demand, in this instance, for payment of any taxes, as such condition precedent, respondent's deputy evidently, although unintentionally, transcended his statutory powers and authority in the premises. The statute does not contemplate that any such dealer will engage in such business without having first procured such license; and it contemplates, and, indeed, expressly provides, that the "tax" which the applicant (dealer) shall pay "for such license" shall be paid, not at date of issuance of such license, but monthly, thereafter, "the tax to be paid on the first of each month which may be due upon the said products handled during the preceding month, as per the record book," etc. Article 3989.

This view of the matter is reinforced and emphasized by the fact that the same Legislature, in 1913 (Acts 33rd Leg., chap. 135), so amended article 917 of our Penal Code as to conform it substantially to the corresponding provisions of Revised Statutes, articles 3988 and 3989, in so far as they are material to the inquiry before us, and incorporated therein the following:

"And any person, firm or corporation, or associations of persons, or any officer, agent or employee of any company, corporation or association of persons who shall engage in the business of a wholesale dealer in fish and oysters, or either, without procuring a license to follow said business, or without paying the tax required by this article, shall be guilty of a misdemeanor, and upon conviction shall be punished by a fine of not less than one hundred dollars nor more than two hundred dollars, and each day such business may be engaged in in violation of this article shall constitute a separate offense; and upon conviction for pursuing said occupation without payment of the tax required by law or for any other violation of the game, fish and oyster law, the license of such dealer shall be forfeited."

We have seen that article 3989 makes it the duty of the applicant to tender, along with the application for such license, "the fee for same."

What is there meant by "fee" is not satisfactorily clear. There is in article 3986 a provision of the same sort, relative to the license to the captain or master of a boat engaging in the business of catching or taking any fish, turtle, terrapin, shrimp, or oysters from the waters of the State for market.

Article 3991, relating to applications for locations for planting oysters and making private oyster beds within the public waters of this State, expressly declares that "a fee of ten dollars cash must accompany such application."

But I have searched both of said statutes of 1913 in vain for some designation of the amount of the "fee" mentioned in either article 3986 or article 3989, unless the word "fee" is there used to designate the "tax" therein prescribed—a thing which seems hardly probable in view of the specific requirements of article 3990 concerning deposits to be made from time to time, by the wholesale dealer, to cover the estimated monthly amount of the tax prescribed by article 3989. Nor have I found elsewhere in our laws any designation of the amount of the "fee" mentioned in article 3989. I am inclined, therefore, to the view that said reference to such "fee" is practically meaningless and inoperative. In my opinion failure of relator to tender such "fee" along with her application for license would not justify respondent in withholding such license, and he does not claim that it would. I refer to that matter solely because it was brought to my attention in reviewing said statutes for the purpose of determining whether relator has or has not shown herself entitled to the writ of mandamus.

From the allegations of relator and the admissions of respondent, as shown in the record before us, I think it should be presumed here that the initial deposit, required by the statute to be made when application for license is filed, was duly made.

It is clear to my mind that such license may not be issued to date back or to relate back to cover the "handling" of fish or oysters for the preceding three months, or any other antecedent period of time. To assume that it could would seem to me to be wholly unauthorized by said civil and criminal statutes and, indeed, in their very teeth, as they must be construed together. If that assumption were well founded, the respondent or his deputy, by so doing, might grant absolute dispensation to one who has long violated the clear provisions of our Penal Code. I do not understand the majority opinion to hold that the license could be so dated back or so relate back.

My conclusion is that relator's petition should be granted, and the writ of mandamus should be issued.