## EUBANKS et al. v. TUCKER et al.

### No. 232.

District Court, S. D. Texas, Brownsville Division.

March 27, 1944.

Concurring Opinion April 1, 1944.

Polk Hornaday, of Harlingen, Tex., for plaintiffs.

Gerald C. Mann, Atty. Gen., and W. R. Allen, Asst. Atty. Gen., for defendants.

Before HUTCHESON, Circuit Judge, and HANNAY and KENNERLY, District Judges.

HANNAY, District Judge.

This is a suit brought by B. G. Eubanks and wife, C. W. Eubanks, who has had her disabilities of coverture removed, complaining of William J. Tucker, individually and in his official capacity as Executive Secretary of the Texas Game, Fish and Oyster Commission, and J. B. Arnold, individually and in his official capacity as Director of the Coastal Division of the Texas Game, Fish & Oyster Commission, and their respective servants, agents, and employees, and game wardens, whereby the plaintiffs, wholesale fish dealers located in Brownsville, Texas, seek a preliminary and final injunction restraining the defendants from interfering with the plaintiffs in their fish business. For cause of action plaintiffs allege, in substance, that they are engaged in the acquiring of fish in the Republic of Mexico and selling and delivering same to customers in the states north and east of Texas, and particularly in the States of Oklahoma, Louisiana, Tennessee and Arkansas, such being in foreign and interstate commerce; that the defendants have interfered with, and threaten to interfere with, plaintiffs in such business, and to prosecute plaintiffs, and to impound plaintiffs' fish in foreign and interstate commerce, and to thus take, injure and destroy the plaintiffs' property without due process of law. The defendants admit that they inspect the fish of the plaintiffs, and that the laws of Texas provide for the inspection, and also for the seizure of fish that are of a size prohibited to be possessed by anyone within the State of Texas, and that they will, as is their duty, prosecute plaintiffs in event of their violation of said Texas law.

Inasmuch as the violation of a Texas statute is involved, the constitutionality of which is challenged, a three-judge court, composed of Circuit Judge JOSEPH C. HUTCHESON, Jr., Judge THOMAS M. KENNERLY, and Judge ALLEN B. HANNAY, pursuant to due notice of the calling of same, heard the case on the Application for Temporary Injunction, in Houston, Texas, on February 12, 1944. By agreement of the parties also, at the same time, the case was submitted on the merits on a stipulation, supplemented by oral evidence. The

vital portions of the stipulation are, as follows:

"Plaintiffs catch the fish in Mexico and in the coastal waters of Mexico approximately 126 miles South of the Mouth of the Rio Grande River. Thence, the fish are hauled by truck, plane, and boat, being loaded in bulk packed with ice; before being thus loaded, however, they are gilled and gutted; being transported to Matamoros where the fish are weighed, inspected by Mexican Custom Authorities, and Mexican Export Duties are paid. Thence, the fish are crossed at the International Bridge between Matamoros and Brownsville, into Brownsville onto plaintiffs' fish house where the United States Custom Officials go and inspect and weigh the same fish and collect the duties thereon.

"When reaching Matamoros by truck, which is most generally the way the fish are hauled, the same truck and truck driver delivers the fish to plaintiffs' fish house in Brownsville for the Custom Inspector mentioned above. At the fish house in Brownsville, the fish are emptied from the truck bringing the same, into tubs for weighing under the supervision of the United States Custom Inspectors.

"Plaintiffs have customers in states North and East of Texas in the market for over-size fish and fish not conforming in size to Texas Fish Laws; for example, red fish more than thirty-two (32″) inches long; it not being illegal to sell red fish in excess of 32″ in length, in several of these states.

"Plaintiffs seek and attempt to supply this demand by transporting from Mexico, and from Mexican Coastal waters 126 miles south of the Mouth of the Rio Grande River, and selling and delivering such fish to plaintiffs' customers in other states.

"These fish must be and are inspected by the Mexican Custom Officials at Matamoros, Mexico; then across the International Bridge at Brownsville where the fish are inspected and duties are paid to the United States Customs Officials.

"That plaintiffs, in addition to the business described in the complaint, are also, during a part of each year, at the same place of business, engaged in the business of handling shrimp caught in Texas Coastal Waters for sale and shipment in both intrastate and interstate commerce.

"That about 50% of the fish described in the complaint as imported from Mexico are sold and delivered by plaintiffs to other wholesale and retail fish dealers doing such business within the State of Texas, and the other 50% are sold to customers from other states. That of the 50% sold to customers in other states, about 50% or 25% of the total, are sold and delivered to such customers at Brownsville, Texas, and by them transported in trucks out of the State of Texas; of the other 50% of the fish sold to out-of-state customers approximately one-half are shipped out of Texas to the other states by common carrier and one-half in plaintiffs' own trucks. That all of such fish, both those sold to Texas customers and those sold to out-of-state customers, are, after their importation from Mexico, re-iced and stored altogether in bulk in vaults in plaintiffs' fish house in Brownsville, except for separation according to species, and then on orders for same are sold to customers within the State of Texas, or in other states, as the case may be.

"That such fish are so stored in plaintiffs' fish house for varying lengths of time, ranging usually from a few hours to five days, sometimes a delay running to a 5-day period being due to accumulating enough fish to fill an order, or due to delay in getting containers. That about 10% of them are sold and shipped out to other states by common carrier on the same day on which they are placed in the vault."

The Texas statutes applicable and in question are, as follows: Vernon's Ann.Civ. St. Art. 4016; Art. 4021; Vernon's Ann. P.C. Art. 978f, Art. 4018 and Art. 978m. The above-mentioned statutes having to do with the creation of and the duties concerning the Game, Fish and Oyster Commission of Texas. Article 929, Revised Penal Code of Texas, is as follows: "It shall be unlawful for any person to sell, or offer for sale, or to have in his possession, or to have on board any boat or to have in any mercantile business establishment, or in any market where merchandise is disposed of, any redfish or channel bass of greater length than thirty-two inches, or less than fourteen inches; any salt water or speckled sea trout of less length than twelve inches; any sheephead of less than nine inches in length; any flounder of less than twelve inches in length; any pompano of less than nine inches in length; any mackerel of less than fourteen inches in length, and any salt water gaff-topsail of less than eleven inches in length", and also provides for venue.

Article 941, Revised Penal Code of Texas, Vernon's Ann.P.C. art. 941, provides as

follows: "Sec. 1e. Provided, that it shall be unlawful for any person to take, or have in his possession in this State, any speckled sea trout of less length than twelve inches, any red fish of less length than twelve inches, or of greater length than thirty-two inches, or any drum of less length than eight inches or greater length than twenty inches, any flounder of less length than twelve inches, or any sheephead of less length than eight inches", and also provides for a penalty in event of conviction, and for the automatic cancellation of the dealer's license for one year from date of his conviction; and, further provides: "that the Game, Fish and Oyster Commissioner of Texas or his deputy shall have the power and right to seize and hold nets, seines, or other tackle in his possession as evidence until after trial of defendant and no suit shall be maintained against him therefor."

The ultimate issue in this case is whether a Federal Court should, by issuing the injunction, aid in the consummation and continuation of what appears to be a violation of the Penal Code of the State of Texas. This is equally true whether the fish were caught in Texas or brought in afterwards. The violation is complete when possession is had in Texas. In the case of People of State of New York ex rel. Silz v. Hesterberg, 211 U.S. 31, 29 S.Ct. 10, 12, 53 L.Ed. 75, the question of possession of plover, grouse, and other game birds during the closed season, which was prohibited by a New York statute, was under consideration. Grounds of defense urged were "(1) That the game law in question was contrary to the Fourteenth Amendment to the Constitution of the United States, in that they deprived him and others of their liberty and property without due process of law; (2) that the provisions of the law contravened Section 8 of Article I of the Federal Constitution, being an unjustifiable interference with and regulation of interstate and foreign commerce. As to the latter proposition, the Supreme Court of the United States said:

"That a state may not pass laws directly regulating foreign or interstate commerce has frequently been held in the decisions of this court. But, while this is true, it has also been held in repeated instances that laws passed by the states in the exertion of their police power, not in conflict with laws of Congress upon the same subject, and indirectly or remotely affecting interstate commerce, are nevertheless valid laws. Missouri, K. & T. R. Co. v. Haber, 169 U.S. 613, 18 S.Ct. 488, 42 L.Ed. 878; Pennsylvania R. Co. v. Hughes, 191 U.S. 477, 24 S.Ct. 132, 48 L.Ed. 268; Asbell v. [State of] Kansas, 209 U.S. 251, 28 S.Ct. 485, 52 L.Ed. 778, [14 Ann.Cas.1101]."

This case was cited with approval by Judge Hutcheson in the case of Gulf Fisheries Co. v. Darrouzet, D.C.S.D.Tex., 17 F. 2d 374, 376, wherein he said:

"It is settled law that the state (Texas) has the widest powers over, not only the taking, but the handling, of fish and game within its borders."

See also the cases cited in said opinion.

· ■ We are of the opinion that the Texas statutes, above mentioned, are plain and unambiguous, and not in conflict with any provisions of the United States Constitution. See Gulf Fisheries Co. v. MacInerney, 276 U.S. 124, 48 S.Ct. 227, 72 L. Ed. 495; Adams Fish Market v. Sterett, 106 Tex. 562, 172 S.W. 1109, opinion by Judge Phillips; and that they validly prohibit what plaintiff is seeking with the aid of the court to do. It, therefore, follows that the temporary injunction sought should be and the same is hereby denied, and also that the bill should be dismissed for want of equity.

In making this decision it has not been necessary to, and we expressly do not, decide the legality of threatened seizure of fish found to be unlawfully possessed in Texas.

KENNERLY, District Judge (concurring in part).

Plaintiffs pray that defendants be enjoined and restrained:

(a) From arresting and prosecuting them in the Courts of Texas for having in their possession, etc., fish of a size, etc. violative of the Texas Statutes.

(b) From seizing, etc., such fish.

1. On the question of enjoining Plaintiffs' arrest and prosecution under the Texas statutes, I see no difference in principle between this case and the cases of Douglass v. Jeannette, 319 U.S. 157, 159, 63 S.Ct. 877, 882, 87 L.Ed. 1324, and Lee v. City of El Campo, 5 Cir., 135 F.2d 740; Id., D. C., 50 F.Supp. 411, and think plaintiffs' bill to enjoin such arrest and prosecution should be dismissed for the reasons there stated. If, however, equity requires us to consider such Bill for such relief, I think Silz v. Hesterberg, 211 U.S. 31, 35, 29 S.

Ct. 10, 53 L.Ed. 75, is controlling and that, as stated in the majority opinion, plaintiffs' case for such relief must fall.

2. But plaintiffs' suit to enjoin defendants from seizing, etc., their fish (of an unlawful size) is another matter. Defendants point to no Texas statute, and I have been able to find none, authorizing such seizure, etc., and I am convinced that any such seizure, etc., by defendants would be unlawful. Since, however, plaintiffs' possession of such fish (of an unlawful size) is prohibited under the Texas statutes, plaintiffs may not have the aid of a court of equity in preventing their seizure, etc., by defendants. Thompson v. Spear, 5 Cir., 91 F.2d 430; Whittington v. Smith, D.C., 16 F.Supp. 448. I think for that reason plaintiffs' bill to enjoin such seizure, etc., should be dismissed.