## GULF FISHERIES COMPANY *v.* MacINERNEY.

APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF TEXAS.

No. 178. Argued January 16, 1928.—Decided February 20, 1928.

A state license tax upon dealing in fish, regulated according to the
weight sold, is not unconstitutional as applied to imported fish
which, when the tax attaches, have lost their distinctive character
as imports and have become, through processing, handling and sale,
a part of the common property of the State. P. 126.

17 F. (2d) 374, affirmed.

APPEAL from a decree of the District Court of three
judges, denying a final injunction and dismissing the bill
in a suit by the Fisheries Company to enjoin the defend-
ant, a county attorney, from instituting criminal proceed-
ings to enforce payment of a tax.

*Mr. Brantley Harris* for appellant.

The fish handled by appellant are imports. *Gulf Fish-
eries Co.* v. *Darrouzet,* 17 F. (2d) 374; *United States* v.
*Sischo,* 262 U. S. 165; *Brown* v. *Maryland,* 12 Wheat. 419.

They have not become so mingled with the common
mass of property in the State as to lose their character
as imports, and their exemption from state taxation.
*Brown* v. *Maryland, supra; Low* v. *Austin,* 13 Wall. 29;
*Sonneborn Bros.* v. *Keeling,* 262 U. S. 506; *Cook* v. *Penn-
sylvania,* 97 U. S. 566; *Galveston* v. *Mexican Petroleum
Corp'n,* 15 F. (2d) 208.

The fish are at all times in actual transportation. They
must pass from ship to express car, and they do this over
the terminals of the Galveston Wharf Company. To say
that their decapitation works such a change as to cause
them to become a part of the general property of the
State is to look at form rather than substance.

*Mr. D. A. Simmons,* with whom *Mr. Claude Pollard* was on the brief, for appellee.

Mr. Justice Brandeis delivered the opinion of the Court.

The general statutes of Texas provide that no person shall engage in the business of wholesale dealer in fish without procuring a license from the Game, Fish and Oyster Commissioner; that the licensee shall pay a tax of one dollar for each 1,000 pounds of fish handled by him; and that failure to pay the tax shall constitute a misdemeanor for which the person offending may be punished. Texas Penal Code, 1925, Art. 936.

The Gulf Fisheries Company, a New York corporation engaged in the wholesale fish business at Galveston, Texas, brought this suit against the County Attorney, in the federal court for southern Texas. The bill alleged that, as applied to the plaintiff, the above statute is void, as it lays an impost on imports and burdens foreign and interstate commerce, thus violating the Federal Constitution; that, because the statute is void, plaintiff refused to pay the tax demanded; that, because of its refusal, criminal proceedings are threatened; and that, unless these are enjoined, plaintiff will be subjected to irreparable injury to an amount exceeding $3,000. Both an interlocutory and a final injunction were prayed for. A temporary restraining order issued. An application for the interlocutory injunction was made and heard before three judges under § 266 of the Judicial Code. The defendant moved to dismiss the bill; and also answered. Upon final hearing before the three judges the " temporary injunction" was dissolved; the final injunction was denied; and the bill was dismissed. 17 F. (2d) 374. The case is here on direct appeal from the final decree. *Smith* v. *Wilson,* 273 U. S. 388; *Clark* v. *Poor,* 274 U. S. 554.

Here, the only claim made by the Company is that the statute as applied lays an impost on imports. The County Attorney denies that the fish taxed are imports; insists that even if they are imports, the tax is valid as a license fee exacted to defray the cost of inspection; and contends that the imposition is, in any event, valid, because the fish, before the tax is laid, become mingled with the common mass of property in the State and thus lose their character as imports and their exemption from state taxation. We have no occasion to enquire whether the fish are imports. Nor need we enquire whether the statute could be sustained as an inspection law. On the facts agreed, the tax is not laid until the fish have lost their alleged distinctive character as imports and have become, through processing, handling and sale, a part of the mass of property subject to taxation by the State. The facts are these:

The fish are caught in the Gulf of Mexico and are landed, in bulk, by the fishing boats on the wharf of the Galveston Wharf Company. That is the Gulf Fisheries Company's only place of business. And there it has the privileges required for the conduct of its business. It has space for unloading the fish; has several large bins or ice-boxes for storage, handling and re-icing; has space for loading fish on express cars; and has space for the office work incident to the loading, selling and shipping. After the fish are unloaded from the vessels, all are weighed and washed. All are immediately re-iced to prevent spoiling. About 75 per cent. are there beheaded and gutted; 7 to 10 per cent. are gutted and gilled with heads on; the remainder are left for sale without beheading or removing gills or entrails. All, except 15 or 20 per cent. which are sold to wholesale dealers within the city, are put into barrels, loose with ice, ready for shipment in

filling orders.  None are placed in cold storage plants. All are shipped from the wharf as fast as they can be re-iced, washed, handled and loaded as above stated. Nearly all are shipped on the day they are unloaded from the boats.  Occasionally, some are held in the ice boxes on the wharf for more than forty-eight hours.  All are sold to wholesale dealers in quantities of from 50 to 400 pounds.  None are sold to retailers.

The tax is laid, not according to the weight of the fish when landed, but upon the fish sold.[1]  All that is sold, has been handled as above stated.  None of it has remained in its original condition.  None is in an original package, and little in its original form.  This is obviously true of the 75 per cent. which is beheaded and gutted and of the 7 to 10 per cent. more which is gutted and gilled with the heads on.  But the small remainder is, when sold, no longer in its original condition.  Before sale, it is washed and re-iced.  It is taken from the bulk and put loose with ice in barrels.  And all this has been done on the wharf.  These facts make inapplicable cases like *Brown* v. *Maryland,* 12 Wheat. 419; *Low* v. *Austin,* 13 Wall. 29; *Cook* v. *Pennsylvania,* 97 U. S. 566.  All the fish sold have, after landing and before laying the tax, been so acted upon as to become part of the common property of the State.  They have lost their distinctive character as imports and have become taxable by the State.  Compare *Sonneborn Bros.* v. *Cureton,* 262 U. S. 506.

*Affirmed.*

---

[1] Compare *Adams Fish Market* v. *Sterrett,* 106 Tex. 562, 563–4; Texas Revised Civil Statutes (1911) Art. 3987; Texas Penal Code (1911) Art. 917; Texas General Laws, 1913, c. 135, p. 272 (Art. 917), c. 146, p. 299 (Art. 3987); Texas General Laws, 1919, c. 73, Art. 16; Texas General Laws, 1925, c. 178, p. 439 (Art. 16).