[Nos. 27411, 27412. Department Two. April 17, 1940.]

W. J. LAKE & COMPANY, INC., *Respondent,* v. KING COUNTY *et al., Appellants.*[1]

[1]Reported in 101 P. (2d) 357.

*B. Gray Warner* and *Lloyd W. Shorett,* for appellants King County *et al.*

*Elias A. Wright (Sam A. Wright,* of counsel), for appellant Stacy.

*Stevenson & Gershon,* for respondent.

*Trefethen, Porterfield & Trefethen, Edwin C. Ewing,* and *Daniel B. Trefethen, amici curiae.*

GERAGHTY, J.—These actions, consolidated for the purpose of trial and appeal, involve the validity of personal property taxes attempted to be levied by King county, in the years 1935 and 1936, upon stocks of liquor held in a storage warehouse, in accordance with regulations of the Washington state liquor control board. At the suit of the respondent, Ralph S. Stacy, as treasurer of King county, was permanently enjoined "from levying and collecting" any personal property taxes upon these stocks of liquor. While the injunction ran only against the treasurer, King county and its assessor, Roy B. Misener, were named with the treasurer as defendants.

Before considering the appeal on the merits, it is necessary to dispose of two preliminary questions.

■ The right of the respondent to maintain the actions without first paying the challenged tax, in accordance with the provisions of Laws of 1931, chapter 62, p. 201 (Rem. Rev. Stat., § 11315-1 [P. C. § 6882-189] *et seq.*), was not raised below and is not raised here in the brief of the prosecuting attorney. The county treasurer, however, has raised the question in a brief filed by counsel appearing for him separately, in

which he challenges the jurisdiction of the court below and of this court to entertain the action in absence of the compliance with chapter 62.

Without passing upon the timeliness of this attack, nor of the right of the treasurer to appear by separate counsel, we may say that the question raised is disposed of adversely to the treasurer's contention in the case of *Petroleum Nav. Co. v. King County*, 1 Wn. (2d) 489, 96 P. (2d) 467.

█ It is alleged in a petition filed by the treasurer "for authority to intervene, and objection to settlement and compromise," and a supporting affidavit, that, after judgment was entered below and appeal perfected, the county commissioners, by resolution, authorized a compromise of the controversy by payment to the county treasurer of a stated sum by the respondent in satisfaction of the county's claim for taxes. The treasurer challenged the regularity and legality of the compromise and, apparently, refused to accept payment from the respondent of the amount agreed on. The county and the respondent demurred to the petition and moved to have it stricken. The demurrers were overruled and the motions to strike denied, after hearing, by a department of this court.

It is urged by the respondent that the appeal should be dismissed, because, by reason of the action of the county commissioners, the question in controversy has been settled and is moot. We do not agree with this suggestion. The settlement is disputed, and, in any event, its terms have not been carried out.

█ The taxability of the liquor was dependent on whether, while held in storage for transshipment without the state, its movement in the flow of interstate commerce had ceased and it had become part of the general mass of property within the state. In resolving this question, consideration must be given to the

provisions of the Washington state liquor control act, Laws of 1933, Ex. Ses., chapter 62, p. 173 (Rem. Rev. Stat. (Sup.), § 7306-1 [P. C. § 3180-11] *et seq.*), and the regulations adopted by the liquor control board under authority of the act, as well as to the manner in which liquor was handled as disclosed by the evidence.

By the terms of the liquor control act, the importation of liquor, and its sale in the state, was made a state monopoly. Provision, however, was made in § 49, subd. 2, p. 196 (Rem. Rev. Stat. (Sup.), § 7306-49 [P. C. § 3180-59], subd. 2), for transshipment of liquor in interstate and foreign commerce, as follows:

"Nothing in this act shall prevent the transshipment of liquor in interstate and foreign commerce; but no person shall import liquor into the state from any other state or country, except, as herein otherwise provided, for use or sale in the state, except the board."

Subdivision 3 of § 67, p. 203 (Rem. Rev. Stat. (Sup.), § 7306-67 [P. C. § 3180-77], subd. 3), provides that nothing in the act shall be construed as preventing the board from accepting liquor on consignment.

The liquor board, under authority conferred upon it by the act, made the following regulation in respect of the importation of liquor:

"Pursuant to Section 49 (2) of the Washington State Liquor Act, importations of liquor (except beer, alcoholic content of which does not exceed four per cent by weight, and sacramental wines consigned to any clergyman or religious organization) cannot be made to any point in the State of Washington, for use or sale therein, unless such importations be consigned to the Washington State Liquor Control Board. Acceptance by the carrier of liquor not so consigned should be refused, as delivery thereof will be denied by the Board.

"Shipments of liquor to be stored in the State of Washington, for transshipment to points beyond the

state, must be consigned to the Washington State Liquor Control Board, for the account of the shipper, in care of such public warehouses as are authorized by and bonded to the Washington State Liquor Control Board." (1935 Revised Rules and Regulations, p. 68.)

These statutory and liquor board regulations were in effect during the years 1935 and 1936. The 1937 legislature, by chapter 217, p. 1062, § 1 (Rem. Rev. Stat. (Sup.), § 7306-23J [P. C. § 3180-33a] *et seq.*), amended the liquor act by providing for the licensing of liquor importers, but we are not here concerned with this amendment.

The liquor in controversy had been consigned to the liquor control board and was stored in a warehouse licensed by it in the city of Seattle, for transshipment by respondent. Respondent was engaged in the business of importing and exporting liquor, having its place of business in Seattle. Its principal exporting business was done with Alaska, but it also supplied liquor to state monopolies in Oregon, Idaho, and Utah, in which states it maintained offices.

In the course of its business, respondent received orders for liquor from Alaska and the states mentioned, and also from the Washington liquor board. To meet these orders, it, in turn, sent orders to distilleries in California and certain eastern states. In buying from the manufacturers, it frequently ordered from ten to fifteen per cent more liquor than the orders on hand from its customers required; thus, it generally had orders for from eighty-five to ninety per cent of the shipments it received from the manufacturers. On arrival in Seattle, the liquor was stored in the warehouse. It might be reshipped at once or remain for some time in the warehouse before reshipment. It never remained in the warehouse for a longer period than six weeks before reshipment. For the convenience

of the warehousemen in filling orders for shipment, liquor, on entering the warehouse, was stored in separate lots for each region to which it was to be shipped. The liquor held for the Washington liquor board was earmarked and stored separately from the liquor intended for other customers.

Respondent's president testified that, as to the liquor ordered for the Washington liquor board, his company acted merely as agent for the distillery, although it appears that, through some arrangement with the board, the nature of which is not clear, the respondent sometimes secured advances from banks on warehouse receipts covering the liquor designated for the board's use. To fill a rush order, the respondent, at one time, had taken a few cases of liquor allocated to the liquor board and sold it to an Alaskan customer, later replacing the liquor so taken. The respondent had occasionally sold liquor to the officers' headquarters at the Bremerton navy yard and to ships engaged in the Alaskan and coastwise trade. It had also, on occasions, sold liquor, as an accommodation, to the other exporters to Alaska, such sales having been consummated by a transfer in the warehouse; that is to say, there was a change of ownership, but the liquor remained in the warehouse until shipped to Alaska.

Considering that the plan of operation followed by the respondent was that formulated by the state liquor board for facilitating transshipment in interstate commerce, and that the liquor could not be diverted to any use in the state, we are of the opinion that it was not taxable. As a matter of fact, the liquor coming into the state on consignment to the state liquor board remained under the board's control until it was again delivered out of the warehouse to the carrier for transportation outside the state. The occasional sales to the officers' headquarters at the navy yard and to ships

in the Alaskan and coastwise trade, were made, doubt-less, on the assumption that they were in conformity with the liquor board's regulations.

The fact that some of the liquor in storage was re-served for the use of the liquor board did not affect the interstate status of the remainder. The board's liquor was ordered directly by it from the manufac-turers for its own use and was paid for as it was with-drawn from storage.

"Formalities, such as the forms of billing, and mere changes in the method of transportation do not affect the continuity of the transit. The question is always one of substance, and in each case it is necessary to consider the particular occasion or purpose of the interruption during which the tax is sought to be levied. *Champlain Co. v. Brattleboro* [260 U. S. 366], *supra,* p. 377; *Southern Pacific Terminal Co. v. Inter-state Commerce Comm'n,* 219 U. S. 498; *Texas & N. O. R. Co. v. Sabine Tram Co.,* 227 U. S. 111; *Carson Petroleum Co. v. Vial* [279 U. S. 95], *supra.* The mere power of the owner to divert the shipment already started does not take it out of interstate commerce if it appears 'that the journey has already begun in good faith and temporary interruption of the passage is reasonable and in furtherance of the intended trans-portation.' *Hughes Bros. Co. v. Minnesota,* 272 U. S. 469, 476.

"Where property has come to rest within a State, being held there at the pleasure of the owner, for dis-posal or use, so that he may dispose of it either within the State, or for shipment elsewhere, as his interest dictates, it is deemed to be a part of the general mass of property within the State and is thus subject to its taxing power." *Minnesota v. Blasius,* 290 U. S. 1, 10, 78 L. Ed. 131, 54 S. Ct. 34.

In the present case, the liquor was in storage under the liquor board's control. It could have been released for no other purpose than transshipment in interstate or foreign commerce. Under the circumstances, it

could not be deemed to have been part of the general mass of property within the state subject to its taxing power.

The judgment of the trial court was correct and should be affirmed.

BEALS, STEINERT, and JEFFERS, JJ., concur.

BLAKE, C. J. (dissenting)—I dissent. The liquor in question was the property of the respondent. It was, of course, held subject to the provisions of Laws of 1933, Ex. Ses., chapter 62, p. 173, and the regulations of the liquor control board made pursuant thereto. But it was none the less the property of the respondent. I do not find anything in that act or any other act of the legislature which exempts liquors held by dealers or individual citizens from *ad valorem* taxation. Even when the legislature has, pursuant to constitutional authority, provided for exemptions from taxation, such exemptions are strictly construed, and claims of exemption will not be sustained unless they fall within the letter of the law. *Norwegian Lutheran Church v. Wooster*, 176 Wash. 581, 30 P. (2d) 381.

Respondent's situation, so far as taxing statutes are concerned, is no different than that of any individual who purchases a barrel of whiskey and stores it in his cellar. I take it that no one would question that such liquor would be subject to *ad valorem* taxation. Yet the owner could import it and possess it only in accordance with the provisions of the liquor control act and the regulations of the liquor control board.

As I see it, the only ground upon which the respondent could legally escape the taxes levied by King county would be upon the theory that the liquor was moving in interstate commerce. But property brought into this state and stored with the intention of resale out of the state cannot escape taxation on the theory

that it is moving in interstate commerce. *General Oil Co. v. Crain*, 209 U. S. 211, 52 L. Ed. 754, 28 S. Ct. 475; *Bacon v. Illinois*, 227 U. S. 504 (514, 515, 516), 57 L. Ed. 615, 33 S. Ct. 299; *Susquehanna Coal Co. v. South Amboy*, 228 U. S. 665, 57 L. Ed. 1015, 33 S. Ct. 712. These cases are all closely analogous, on their facts, to the case at bar. In the *Bacon* case, there was involved grain grown in western and southern states, stored in an elevator in Chicago and destined for sale and transportation to other states and countries. Mr. Justice Hughes, speaking for the court, said:

"We come then to the question whether the grain, here involved, was moving in interstate commerce so that the imposition of the local tax may be said to be repugnant to the Federal power.

". . . neither the fact that the grain had come from outside the State nor the intention of the owner to send it to another State and there to dispose of it can be deemed controlling when the taxing power of the State of Illinois is concerned. The property was held by the plaintiff in error in Chicago for his own purposes and with full power of disposition. It was not being actually transported and it was not held by carriers for transportation. The plaintiff in error had withdrawn it from the carriers. . . . He had established a local facility in Chicago for his own benefit and while, through its employment, the grain was there at rest, there was no reason why it should not be included with his other property within the State in an assessment for taxation which was made in the usual way without discrimination."