[No. 36147.  Department Two.  June 21, 1962.]

TIDEWATER TERMINAL CO., INC. *et al.*, *Appellants*, v. THE STATE OF WASHINGTON *et al.*, *Respondents.*\*

\*Reported in 372 P. (2d) 674.

*Don Cary Smith (White, Sutherland & White* and *E. Wayne Cordes,* of counsel), for appellants.

*The Attorney General* and *Timothy R. Malone, Assistant,* for respondents.

HUNTER, J.—This appeal results from a judgment of the Superior Court for Thurston County which upheld the validity of two orders of assessment by the Tax Commission of the State of Washington.

Tidewater Terminal Co., Inc., and Tidewater-Shaver Terminal Co., as co-plaintiffs, commenced this suit to enjoin the state tax officials from collecting portions of the taxes assessed against them under RCW 82.04, the Business and Occupation Tax, and to obtain refunds for the portions of the same tax assessments which were previously paid.

The plaintiffs (appellants) are corporations organized and existing under the laws of the state of Oregon and are engaged in business within the state of Washington. The plaintiff Tidewater Terminal Co., Inc., who will be referred to hereafter as Tidewater, owns storage tanks and related facilities at its terminal at East Pasco, Washington. Tidewater provides the service to oil and gas companies of storing in the tanks gasoline and other petroleum products which are received at the terminal by means of pipelines and barges. After a period of storage, the products are released from the tanks into pipelines, trucks or rail cars

of the oil and gasoline companies, their agents or their purchasers. Tidewater does not hold title to any products which pass through its facilities and does not own or control the facilities which convey the products to the terminal or convey the products from the terminal.

All of the products handled by Tidewater come from points outside the state of Washington and are ultimately destined for places both within and out of the state. The products received by Tidewater at its terminal are shipped there on bills of lading which designate East Pasco, Washington as the point of destination or port of discharge. The destination of the products, after release from the tanks at the terminal, is designated by the owners of the products.

The activities of the plaintiff Tidewater-Shaver Terminal Co., hereafter referred to as Tidewater-Shaver, are much the same as that of Tidewater. It owns and operates a terminal consisting of tanks and related facilities at East Pasco, Washington. It provides the service of storing in its tanks anhydrous ammonia received from river barges which bring the products from points outside of the state of Washington. After a period of storage, the product is transferred from the tanks into trucks and rail cars and shipped to various points both in and out of the state. Tidewater-Shaver also has no title to the products handled and does not own or control any of the means of transporting the product either to or from its terminal. An arrangement similar to that of Tidewater's is followed with respect to shipping documents.

Prior to the trial, the defendant Tax Commission (respondent) entered into a stipulation with the plaintiffs which provided in part as follows:

"As to both plaintiffs, Tidewater Terminal Company, Inc., and Tidewater-Shaver Terminal Co., Inc., the Tax Commission in its order No. 60-11 dated the 2nd of February, 1960, conceded that the taxes imposed should be measured by gross income allocable to storage activities and should not be measured by income allocable to loading and off-loading activities. Accordingly, it is not the contention of the Tax Commission that all the activities described in the

following paragraphs *V* through *XI* of the stipulation are subject to the Business and Occupation Tax."

In connection with this stipulation, the parties further clarified during the trial that the activities of the plaintiffs, which consist of the actual off-loading and loading of interstate carriers, are not taxable and have admitted that the taxes here in question were levied under RCW 82.04.290 upon the privilege of engaging in the storage activities.

The tax assessed against Tidewater covered the audit period from March 1, 1953 through December 31, 1954, and was measured by Tidewater's gross income during that period. The tax assessed against Tidewater-Shaver was measured by its gross income during the period from January 1, 1955 through February 28, 1959.

The trial court found that the products handled by Tidewater and Tidewater-Shaver cease to be the subject of interstate commerce when they are stored in their facilities and that the storage activities of the plaintiffs are in intrastate commerce. Accordingly, it concluded the taxes were valid and sustained the orders of assessment without prejudice to the plaintiffs' right to make a showing of the portions of the assessments which are attributable to its tax-exempt activities and to request a refund therefor.

The plaintiffs have assigned as errors the trial court's conclusions that the handling of the products in the tanks is an intrastate activity and that the products are subjects of intrastate commerce when they are received into the tanks and until they are released and again begin an interstate journey. The plaintiffs contend that their business is merely a service which facilitates a continuous interstate movement of goods and, as such, a tax imposed upon the privilege of engaging in that service is invalid under the commerce clause, Art. 1, § 8, United States Constitution, as a tax upon the privilege of engaging in an interstate activity.

This court is again faced with the delicate problem of determining the line between the state's power to tax activities occurring within its territorial jurisdiction and the lack of power to unduly burden interstate commercial

activity which, by the federal constitution, is within the power of Congress to control. After careful consideration of the decisions of the United States Supreme Court, by which we are bound, we are satisfied that the conclusions of the trial court are correct and the tax assessments here involved were validly imposed.

The factual situation in this case closely resembles that involved in *Independent Warehouses, Inc. v. Scheele*, 331 U. S. 70, 91 L. Ed. 1346, 67 S. Ct. 1062 (1947), and we think the reasoning and rule announced therein controls the disposition of this case.

In the *Independent Warehouses* case a township in New Jersey imposed a municipal license tax on the business of storing personal property for hire. The ordinance specified a fee of three-quarters of one cent for each square foot of ground in the township where the business is carried on. The plaintiff operated a storage yard where coal shipped from coal mines in Pennsylvania was stored for a period until shipped out to consumption areas in New York and other states. The plaintiff had no title to the goods or control over the means of transporting the goods to or from the storage facilities. The court stated that

" . . . [the storage] business also becomes local or interstate depending upon the purposes of the stoppage, whether for transit reasons or chiefly for nontransit ones.

"The authorities above cited, it is true, generally involved property taxes levied upon the stored coal. But their controlling principle applies equally to franchise or other taxes upon the business of furnishing the storage facilities. . . . It would be an impermissible anomaly to hold that the goods stored may be taxed, because the interruption of transit is for nontransit purposes, but that the business of furnishing the facilities for storing them is not affected or governed legally by the same purposes, for applying the state's powers of taxation."

The court further recognized certain factors as being important to the determination of whether the activity would be characterized as interstate or intrastate.

"A characteristic feature of those cases in which the state has been allowed to tax property which has come to rest

after an interstate journey is that at the time the tax is laid it cannot be determined what the ultimate destination or use of the property may be. . . .

" . . .

"Moreover, in all these cases the duration of the cessation of transit is indefinite . . . It is also significant that invariably the goods are fungibles, . . . The goods which are sent initially into the interstate commerce stream are not the identical goods which finally arrive at the place of consumption."

The holding in *Independent Warehouses* was in favor of the validity of the tax. When the coal arrived at the storage facilities of the taxpayer, its further destination could not be determined until an order was received from the owner, "to what point or person it finally will be sent or to what use it will be put." The fact that the coal was shipped under bills of lading to the storage place and not rebilled until the owner's request for release was received strongly emphasized this point. The court reasoned that as the owner of the coal was free to market the goods to any places it desired, the interruption in transit was primarily for business interests rather than for purely ease-in-transit purposes; hence, the storage activity was part of intrastate commerce.

■ The instant case is substantially indistinguishable from *Independent Warehouses*. All the products transported to Tidewater's and Tidewater-Shaver's terminal facilities are on bills of lading which indicate the terminals as their destination. As to the further destination of the products, information is supplied by the owner directly or through the transportation firms to whom the products are delivered at the terminals. Generally, this information is given to the plaintiffs after the products are received at the terminal. The outgoing products are carried under separate bills of lading, the form of which is either supplied by the owners of the products or made up by the plaintiffs to meet the owners' specifications.

Furthermore, the period of time that the products remain in the storage facilities clearly indicates that they are not merely a conduit for a continuous flow from the incoming

to the outgoing facilities. With regard to Tidewater-Shaver's operation, there are building-up periods which last several months and the products are released approximately twice a year during the Spring and Fall seasons. The products handled by Tidewater come to rest in the storage facilities for a shorter period of time than those handled by Tidewater-Shaver, but the difference in actual time does not amount to a difference in legal consequence. Tidewater's facilities, during the twenty-two month audit period in question, had a storage capacity of 300,000 barrels and handled approximately four and one-half million barrels. If the total capacity were steadily utilized, the products in the tanks would remain there, on an average, for approximately one and one-half months. The record indicates that the tanks were generally used to near capacity and that the fungible products received into the tanks would necessarily remain there for a substantial period of time.

The cases relied upon by the plaintiffs to support their position are not applicable to the instant situation. *Puget Sound Stevedoring Co. v. State Tax Commission*, 302 U. S. 90, 82 L. Ed. 68, 58 S. Ct. 72 (1937) and *Joseph v. Carter & Weekes Stevedoring Co.*, 330 U. S. 422, 91 L. Ed. 993, 67 S. Ct. 815 (1947) involved state taxes upon the privilege of carrying on a business of loading and unloading interstate carriers. The taxes were invalid because the activities were deemed so involved in the transportation process as to be interstate in character. In the instant case, the defendant Tax Commission has agreed that the loading and unloading activities of the plaintiffs are not taxable.

*Michigan-Wisconsin Pipe Line Co. v. Calvert*, 347 U. S. 157, 98 L. Ed. 583, 74 S. Ct. 396 (1954), cited by the plaintiffs, is not in point because the state tax held invalid there was imposed on the activity of starting goods on an interstate movement.

*Carson Petroleum Co. v. Vial*, 279 U. S. 95, 73 L. Ed. 626, 49 S. Ct. 292 (1929), cited by the plaintiffs, also is not applicable. The case involved a property tax levied on oil in storage which was merely awaiting the arrival of foreign

ships to carry it abroad to fill orders previously received. The court held that, under the circumstances, the continuity of the journey was not broken by the storage and the oil was therefore immune from state taxation.

We hold, therefore, that the trial court was correct in concluding that the products handled by Tidewater and Tidewater-Shaver ceased to be the subject of interstate commerce when they were stored in the tanks at their terminals. For this reason, the storage service provided by them was an intrastate activity and amenable to state taxation. *Independent Warehouses, supra; General Oil Co. v. Crain,* 209 U. S. 211, 52 L. Ed. 754, 28 S. Ct. 475 (1908); *Nashville, Chattanooga & St. Louis R. Co. v. Wallace,* 288 U. S. 249, 77 L. Ed. 730, 53 S. Ct. 345, 87 A. L. R. 1191 (1933). We do not reach the question whether the storage activities of the plaintiffs could be the subject of a state privilege tax if the products handled were part of a continuous stream of interstate commerce.

The plaintiffs next assign error to the trial court's approval of the order of assessment on the ground that it is measured, in part, by income attributable to nontaxable activities, *i.e.,* the off-loading and loading of interstate carriers. It is argued that since the defendant Tax Commission has not segregated the income attributable to taxable activities from that attributable to nontaxable activities, the entire order of assessment is void.

This contention is wholly untenable. It is apparent from the record that the plaintiffs have claimed throughout this dispute that the charge to their customers for the service rendered is not capable of itemization with regard to the different activities performed. They did not supply information to the defendant which would enable it to segregate exempt income. Under these circumstances, it was reasonable for the defendant to measure the tax imposed against all the income from the plaintiffs' operations, presuming that it was derived from the taxable activities, and to require the plaintiffs to claim deductions for the amounts stipulated as attributable to their interstate activities. RCW 82.32.180 specifically provides that in a

taxpayer's suit contesting an order of assessment the "burden shall rest upon the taxpayer to prove that the tax as paid by him is incorrect, either in whole or in part, and to establish the correct amount of the tax." There can be no constitutional objection to such a procedural arrangement. *Crown Zellerbach Corp. v. State*, 45 Wn. (2d) 749, 278 P. (2d) 305 (1954); *Department of Treasury v. Ingram-Richardson Mfg. Co.*, 313 U. S. 252, 85 L. Ed. 1313, 61 S. Ct. 866 (1941); *Norton Co. v. Department of Revenue of Illinois*, 340 U. S. 534, 95 L. Ed. 517, 71 S. Ct. 377 (1951). In view of the trial court's order, the plaintiffs still have an opportunity to make a showing of the amounts which should be deducted from the assessments. They have received fair treatment.

The judgment is affirmed.

FINLEY, C. J., DONWORTH, OTT, and HAMILTON, JJ., concur.