[No. 40533.   En Banc.   November 19, 1970.]

ODOM COMPANY, *Respondent*, v. KING COUNTY, *Appellant*.*

*Charles O. Carroll, James E. Kennedy*, and *William L. Paul, Jr.*, for appellant.

*Aiken, St. Louis & Siljeg, Edward L. Mueller*, and *Arthur H. McKean*, for respondent.

HUNTER, C. J.—This action involves the validity of personal property taxes levied by King County in the years 1966 and 1967 upon stocks of liquor held in storage by the plaintiff (respondent) Odom Company, in accordance with regulations of the Washington State Liquor Control Board.

*Reported in 477 P.2d 6.

The trial court, on the basis of motions for summary judgment and on the basis of the affidavits, depositions, and stipulated facts, granted the plaintiff's motion for summary judgment.

The trial court held that the goods upon which the taxes were levied were in interstate commerce, and that the imposition of the taxes was in violation of the commerce clause of the United States Constitution, article 1, section 8, clause 3, and was therefore void. Judgment was entered in favor of the plaintiff for the recovery of such taxes paid, and a permanent injunction was granted restraining collection of taxes levied and not paid and against further taxes of the same character.

The plaintiff imports alcoholic beverages from other states and foreign nations. The goods are stored in Washington and sold only in Alaska. The plaintiff operates pursuant to and is regulated by the Washington State Liquor Control Board. The plaintiff cannot sell any of the alcoholic beverages in this state except for occasional sales to the Liquor Control Board as an accommodation only, which is de minimus in nature.

The plaintiff solicits its business through its local representatives in Alaska who mail their "orders" to the plaintiff. The orders are then filled from the warehouse stock and shipped directly to the respective customers in Alaska. The items remain in the warehouse from 1 month to 1 year. The average time is 1 to 2 months. The uncontradicted affidavit of Raymond Faubert, general manager and vice-president of Odom Company, states as follows:

> The fast selling liquors, wines and beers, turn over from six to twelve times per year. Most of the other items turn over three or four times per year. Almost every line turns over at least once per year.

The plaintiff's inventory may be divided into two categories: (1) imports from other states and foreign countries but not stored in original packages, and (2) imports from foreign countries which are stored in their original packages. This category is also known as the "in-bond" inventory, which means that the federal tax has not yet been

paid but will be when the inventory is taken from a warehouse where it is in-bond and shifted over to the Western Avenue warehouse, thereby taking it out of bond but still remaining in the original packages. The inventory falling in category (1) comprised the majority of the inventory during the questioned period.

In its 1966 "Personal Property Affidavit" the plaintiff reported its assessed valuation was $3,400. In 1967 it reported its assessed valuation as $2,940. Neither of these reported assessed valuations included stocks of liquor. Subsequently an audit was made by the county, and an amended audit report was sent out showing the 1966 assessed value as $273,240 and the 1967 assessed value as $223,040, which included the stocks of liquor in the warehouse upon a monthly average over a 12-month period.

The plaintiff paid the taxes for 1966 under protest and stated the grounds of the protest to be that the taxes were in violation of the United States Constitution, article 1, section 8, clause 3, commerce clause, and RCW 84.36.171 *et seq*. The taxes for 1967 were not paid, the collection of which was enjoined pending the outcome of the case.

The defendant (appellant) contends that the plaintiff failed to comply with RCW 84.68.020, authorizing a taxpayer to institute an action to recover taxes when paid under protest in that no valid grounds in support of the protest were alleged, which is a condition precedent to the right of a taxpayer to bring such an action.

The plaintiff claims the grounds given were valid. The controlling issue then in this case is whether the liquors, upon which the taxes were levied, were goods in interstate commerce in violation of the commerce clause of the United States Constitution, *supra*.

The trial court, in holding the goods were within the ambit of the commerce clause, based its decision on our holding in *W. J. Lake & Co. v. King County*, 3 Wn.2d 500, 101 P.2d 357 (1940); *cert. denied*, 311 U.S. 715, 85 L. Ed. 465, 61 S. Ct. 396 (1940), which in its opinion was dispositive of this case. *Lake* is remarkably similar to the facts in

the present case, and we agree with the trial court that our decision there is controlling here.

In *Lake,* the respondent was a liquor broker and had purchased liquor for shipments to various states other than Washington. When an order was received, the merchandise was purchased and forwarded to Seattle from where the respondent reshipped the liquor to the buyer involved. Liquor was ordered in anticipation of additional sales although approximately 85 per cent of the liquor was not purchased until after an order was received. However, the liquor was shipped on bills of lading to the respondent, not to the ultimate destination, and no particular liquor was earmarked for any particular order or destination. The liquor was never in storage for more than 1 month to 6 weeks. In the case of *Odom,* the average storage time was 1 to 2 months. In *Lake,* as in the case of *Odom,* the importation of liquor and its sale in the state was restricted under the terms of the Washington State Liquor Act.

In *W. J. Lake & Co. v. King County, supra,* at 503, we cited from the provisions of the Washington State Liquor Act which at that time provided:

"Pursuant to Section 49 (2) of the Washington State Liquor Act, importations of liquor . . . cannot be made to any point in the State of Washington, for use or sale therein, unless such importations be consigned to the Washington State Liquor Control Board. . . .

"Shipments of liquor to be stored in the State of Washington, for transshipment to points beyond the state, must be consigned to the Washington State Liquor Control Board, for the account of the shipper, in care of such public warehouses as are authorized by and bonded to the Washington State Liquor Control Board." (1935 Revised Rules and Regulations, p. 68.)

The similar provision of the present rules and regulations provides:

No liquor shall be imported into this state unless such liquor be consigned to the Washington state liquor control board; or unless such liquor be consigned to a holder of a liquor importer's license and delivered at a public storage warehouse authorized by the Washington state liquor control board to store liquor, or at the warehouse

of the holder of the liquor importer's license in those cases where the board has authorized storage at such warehouse. . . . [Rule 89; filed 6/13/63.]

WAC 314-36-020.

We further stated in *Lake:*

Considering that the plan of operation followed by the respondent was that formulated by the state liquor board for facilitating transshipment in interstate commerce, and that the liquor could not be diverted to any use in the state, we are of the opinion that it was not taxable.

. . .

In the present case, the liquor was in storage under the liquor board's control. It could have been released for no other purpose than transshipment in interstate or foreign commerce.

*W. J. Lake & Co. v. King County,* 3 Wn.2d 500, 505, 101 P.2d 357 (1940).

In the present case, Odom Company is also prohibited by the rules and regulations of the Washington State Liquor Control Board, *supra,* and by statute from disposing of its inventory to any point within the state except to the Liquor Control Board, which is heretofore stated as de minimus. The statute, RCW 66.12.030, provides:

Licensed manufacturers not prevented from storing liquor—Transshipment in interstate, foreign commerce—Interstate, foreign transactions protected. (1) Nothing in this title shall prevent any person licensed to manufacture liquor from keeping liquor in his warehouse or place of business.

(2) Nothing in this title shall prevent the transshipment of liquor in interstate and foreign commerce; but no person shall import liquor into the state from any other state or country, except, as herein otherwise provided, for use or sale in the state, except the board.

(3) Every provision of this title which may affect transactions in liquor between a person in this state and a person in another state or in a foreign country shall be construed to affect such transactions so far only as the legislature has power to make laws in relation thereto.

Odom Company must sell its goods outside of the state. Odom Company has the added factor that the goods are

only sold in Alaska and are not sold to any surrounding states as was the situation in *Lake*.

The defendant contends, however, that the *Lake* case relied upon by the plaintiff is outmoded and is no longer the law under decisions of the United States Supreme Court. We disagree. We believe our reasoning in *Lake* to be sound and that our determination there is not inconsistent with United States Supreme Court decisions under the peculiar facts of the *Lake* case.

The defendant basically relied on *Minnesota v. Blasius,* 290 U.S. 1, 78 L. Ed. 131, 54 S. Ct. 34 (1933), and *Independent Warehouses, Inc. v. Scheele,* 331 U.S. 70, 91 L. Ed. 1346, 67 S. Ct. 1062 (1947).

The *Blasius* case is discussed in the *Independent Warehouses, Inc.* case which, along with other cases, was considered by this court in *Tidewater Terminal Co. v. State,* 60 Wn.2d 155, 372 P.2d 674 (1962).

In *Tidewater,* referring to *Independent Warehouses, Inc. v. Scheele, supra,* we said at page 160:

> The court reasoned that as the owner of the coal was free to market the goods *to any places* it desired, the interruption in transit was primarily for business interests rather than for purely ease-in-transit purposes; hence, the storage activity was part of intrastate commerce.

(Italics ours.)

We went on to say that the facts indicated that the storage facilities were not merely a conduit for a continuous flow from incoming to outgoing, and further, that the goods had as a destination both points within and without the state.

We believe the principles stated in *Tidewater* are correct; however, that case is distinguishable upon its facts from the instant case. As in all of the cases discussed by the defendant, the key characteristic is that the goods may be sold both within and without the state. There has been no case cited, nor have we found one, where a state may subject goods to taxation when, by law, there is a limitation that prevents the party from disposing of those goods within that state.

Other cases relied upon by the defendant are distinguishable in that they involve a different category of tax, or that the goods are capable of being sold within the state, or that the ultimate destination is unknown. We hold that under the peculiar facts of this case as in *Lake,* where the goods by law are prohibited from sale within this state, that they are in the stream of interstate commerce, and the taxes as attempted to be levied are in violation of the commerce clause of the United States Constitution, *supra,* and are void.

In view of our disposition of this case, we need not discuss the other issues raised.

The judgment of the trial court is affirmed.

ROSELLINI, HAMILTON, McGOVERN, STAFFORD, and SHARP, JJ., concur.

HALE, J. (dissenting)—Nearly every commodity these days in one way or another identifies with interstate commerce. Alcoholic liquor is no exception. But the fact that plaintiff's liquor arrived in interstate commerce and will one day depart in interstate commerce does not, I think, immunize it from local taxation. Unless the stock of merchandise is in actual transit, it is taxable. If there is a break in the transit so that the commodity comes to rest in this state, it is subject to local nondiscriminatory property taxes here. 15 C.J.S. *Commerce* § 104 (1967 ed.).

Whether there has been a taxable interruption depends, of course, upon all of the circumstances affecting the shipment and what is done to or with the goods while stopped within the state. The crucial test, therefore, is that of "continuity of transit." *Carson Petroleum Co. v. Vial,* 279 U.S. 95, 101, 73 L. Ed. 626, 49 S. Ct. 292 (1929).

[B]y reason of a break in the transit, the property may come to rest within a State and become subject to the power of the State to impose a nondiscriminatory property tax.

*Minnesota v. Blasius,* 290 U.S. 1, 9, 78 L. Ed. 131, 54 S. Ct. 34 (1933).

Judgment of immunity from local taxation was entered on the learned trial judge's conclusion of law that

All the plaintiff's alcoholic beverage inventory stored pending resale and reshipment outside the state of Washington is in the stream of interstate commerce . . . [and] . . . is exempt from personal property taxation by King County, because such tax is a direct tax on goods in transit in interstate commerce and such property is exempt under Article I, Section 8, Clause 3, of the United States Constitution. [Commerce clause.]

Conclusions of law 3, 4. In affirming, this court by necessary implication adopts the trial court's conclusion that the liquor remained "in the stream of interstate commerce" but had to apply the continuity of transit test to reach that conclusion. The goods, in my judgment, however, failed to pass the continuity of transit test, and the conclusions of both the trial court and this court that they were in continuous uninterrupted transit proves to be erroneous. This error arises from the idea that, because alcoholic beverages under existing state liquor laws cannot legally be wholesaled within this state, plaintiff's stocks of merchandise must, as a matter of law, necessarily be deemed to be in continuous uninterrupted transit. That idea rests on an obvious non sequitur for the very statutes which forbid the wholesaling of alcoholic beverages in this state authorize one to engage in the taxable activity of warehousing such stocks for wholesaling them outside the state.

Stocks of liquor held in warehouses here for ultimate resale to retailers in Alaska are no more in continuous, uninterrupted interstate commerce than fish retain their character as imports when caught on the high seas and landed for processing, icing, storage and resale. *Gulf Fisheries Co. v. MacInerney,* 276 U.S. 124, 72 L. Ed. 495, 48 S. Ct. 227 (1928). Each would acquire a situs within the state where brought to rest for processing so as to be deemed a part of the mass of property within the state.

Odom Company, as a wholesale liquor dealer, buys distilled spirits, liquor, wines and beer from the producers and manufacturers outside this state and has them delivered to

its rented warehouses here. It uses two warehouses—one on Western Avenue in Seattle for domestic liquors and the other an in-bond warehouse at Pier 66 in Seattle where it stores its foreign imports. Federal taxes on the in-bond liquors at Pier 66 are not paid until the liquor is removed from the warehouse there, which can be done at any time at plaintiff's order.

The stocks of liquor are shipped to Odom by rail, truck and ship; they are trucked from the railhead or freight depot to the two warehouses and stored there until sold in Alaska. Odom operates under a beer importer's license and a liquor importer's license issued by the Washington State Liquor Control Board. It pays storage fees and handling costs to Olympic Cold Storage and Warehouse Company and to West Coast Distributors, Inc., for storage and handling, but neither of these warehouse operators pays the King County ad valorem personal property tax assessed here on plaintiff's stored merchandise. Odom does not sell its liquors within this state except on an accommodation to the Liquor Board and then without profit. Such sales are so infrequent as to be regarded as de minimus.

Liquor and beer at the time they are stored in plaintiff's warehouses have not yet been ordered by or sold or consigned to any of Odom's customers. Odom keeps the stocks of liquor in storage in its warehouses until its salesmen have obtained orders for them, and they are then shipped to the respective buyers in Alaska. Plaintiff's offices are in Seattle; it has salesmen in Alaska who solicit wholesale orders for liquors there. The salesmen mail their orders to Odom's Seattle offices where the orders are filled from the warehoused stock and shipped directly to the customer in Alaska. Storage here is obviously for business purposes rather than to facilitate the continuous flow of transit. *Tidewater Terminal Co. v. State*, 60 Wn.2d 155, 372 P.2d 674 (1962).

In 1966 and 1967, Odom imported from other states and foreign countries alcoholic beverage stocks valued at $694,392 and $796,266, respectively, which it did not store in its original packages; in those same years, it imported from

foreign countries liquor valued at $195,657 and $154,585 which, however, it did store in its original packages. The county did not and does not attempt to impose an ad valorem personal property tax on the liquors imported from foreign countries which are stored in bond in their original packages. It does urge—and rightly, I think—that all of the other stocks of liquor, however, are not still moving in interstate commerce but have been brought to a halt for the convenience and benefit of the owners here so as to acquire a taxable situs in this state.

King County sought to collect from Odom the personal property taxes assessed against the warehoused liquor for the year 1966 in the sum of $19,455. Odom paid the $19,455 under protest in accordance with RCW 84.68.020, and in the judgment now affirmed was awarded reimbursement in full. Taxability, as affected by interstate commerce, may be determined by applying the continuity of transit test, and ascertaining whether the warehousing of the liquor in Seattle constituted a break in continuous transit. Under this test, unless the interruption in transit is merely incident to the transportation of the goods or is dictated by the necessities or convenience of the transit, the goods become a part of the mass of personalty in the state where they have come to rest. When the halt in the transportation is for the benefit and convenience of the owner of the goods and not merely an interruptive delay, then the goods acquire situs where the halt occurs and are taxable there. *Stebco, Inc. v. Gillmouthe,* 189 Ore. 427, 221 P.2d 914, *cert. denied,* 340 U.S. 920, 95 L. Ed. 665, 71 S. Ct. 358 (1951).

Continuity of transit is the watchword:

[T]he States cannot tax interstate commerce, either by laying the tax upon the business which constitutes such commerce or the privilege of engaging in it, or upon the receipts, as such, derived from it. Similarly, the States may not tax property in transit in interstate commerce. But, by reason of a break in the transit, the property may come to rest within a State and become subject to the power of the State to impose a nondiscriminatory property tax. Such an exertion of state power belongs to that class of cases in which, *by the virtue and nature of*

*local concerns,* the State may act until Congress . . . substitutes its own regulation. The "crucial question," in determining whether the State's taxing power may thus be exerted, is that of "continuity of transit." *Carson Petroleum Co. v. Vial,* 279 U.S. 95, 101.

(Footnotes omitted. Italics mine.) *Minnesota v. Blasius,* 290 U.S. 1, 9, 78 L. Ed. 131, 54 S. Ct. 34 (1933). In applying the continuity of transit test, the courts should not look to the ultimate destination or what finally happens to the goods but rather to the duration, circumstances and conditions of and the reasons for the interruption in transit and see what is done to or for them during the halt. *Independent Warehouses, Inc. v. Scheele,* 331 U.S. 70, 91 L. Ed. 1346, 67 S. Ct. 1062 (1947).

Under these principles, I think the liquor acquired a taxable situs here. As earlier noted, Odom buys the beverages outside the state for ultimate resale in Alaska; the merchandise is delivered to its two warehouses here—consigned not to an Odom customer but to Odom Company. At the time of purchase by Odom and delivery to its warehouses in Seattle, the liquor has not yet been sold; it "has no ascertainable destination without the state." *Federal Compress & Warehouse Co. v. McLean,* 291 U.S. 17, 78 L. Ed. 622, 54 S. Ct. 267 (1934). It remains in warehouses here until finally sold by Odom's salesmen in Alaska to purchasers there. Office work and record keeping in connection with buying the liquor outside the state and shipping, unloading and warehousing it in Seattle and ultimately selling and delivering it to Odom's customers in Alaska is done in Odom's offices in Seattle.

What happens to and in connection with this merchandise is not merely incidental to its transportation but rather constitutes processing essential to the operation of a wholesale liquor distributing business in Seattle. During the years 1966 and 1967, the company in this way brought into its warehouses in Seattle liquor inventories of about $1,000,000, upon which the county levied the tax of $19,336.68 for 1966, computed on an average inventory on hand of $819,572, pursuant to RCW 84.40.020.

Thus, at the time of assessment, the liquor sought to be taxed constituted Odom's stock of merchandise in warehouses in Seattle awaiting sale and delivery to Alaska when and if customers were found for it there. Everything had been done to and for the goods—every service rendered by local government to this merchandise and to the owners that is ordinarily rendered by local government for other owners and to all other goods, wares and merchandise stored for resale in warehouses in Seattle and King County. Fire and police protection, traffic control, schools, streets and highways, telephone and power franchised services— all of the services, facilities and protections available to every wholesaler and their employees by local government was furnished to Odom and its employees by King County and the city of Seattle from the moment the shipments arrived until the moment they left the jurisdiction. During the interval from arrival to departure, none of the services and protections afforded by city and county governments to these stocks of merchandise and the persons who transported, owned, stored and loaded, unloaded and shipped them was denied or withheld. I find no reason in law, therefore, why these goods should not carry their fair share of the ad valorem taxes.

At all times, the liquor was subject to Odom's control; as owner, Odom retained full power to withdraw the merchandise at the place of interruption from further movement or to divert it to states and places other than Alaska. 15 C.J.S. *Commerce* § 104 (1967 ed.). Thus, the holding of the merchandise here in warehouses for ultimate sale constituted a break in the transportation for the benefit, convenience and usage of the owner and placed it among the mass of property in the state subject to local taxes. Where a halt in the movement of goods is for the business convenience and profit of the owners and is not dictated by the convenience and necessities of transportation, the goods become a part of the mass of property in the state where stopped, and are subjected to local taxation there. *Stebco, Inc. v. Gillmouthe,* 189 Ore. 427, 221 P.2d 914, *cert. denied,* 340 U.S. 920, 95 L. Ed. 665, 71 S. Ct. 358 (1950); *State v.*

*Continental Oil Co.*, 218 Minn. 123, 15 N.W.2d 542 (1944), *cert. denied*, 323 U.S. 803, 89 L. Ed. 641, 65 S. Ct. 562 (1945); *Von Hamm-Young Co. v. San Francisco*, 29 Cal. 2d 798, 178 P.2d 745, 171 A.L.R. 274 (1947); *Minnesota v. Blasius*, 290 U.S. 1, 78 L. Ed. 131, 54 S. Ct. 34 (1933).

Many cases have applied these principles. In *General Oil Co. v. Crain*, 209 U.S. 211, 52 L. Ed. 754, 28 S. Ct. 475 (1908), oil from Pennsylvania and Ohio sold and consigned to buyers in Arkansas, Louisiana and Mississippi was found not to be in interstate commerce when held at a distribution point in Tennessee and none of the oil was sold or distributed in Tennessee.

Similarly, gasoline brought into a state, unloaded and stored there for use in its interstate trains, has been held subject to state taxation. *Nashville, C. & St. L. Ry. v. Wallace*, 288 U.S. 249, 77 L. Ed. 730, 53 S. Ct. 345, 87 A.L.R. 1191 (1933).

On this principle, the Supreme Court of the United States reversed the court of appeals to rule that gasoline imported and stored by an airplane company for use as fuel in its airplanes flying in interstate travel was taxable in the state where stored. *Edelman v. Boeing Air Transp., Inc.*, 289 U.S. 249, 77 L. Ed. 1155, 53 S. Ct. 591 (1933).

Similarly, on the theory that a delay or interruption of movement of goods intended for out of state sale and delivery was for the owner's benefit and convenience and not a mere incident of transit, grain removed from railroad cars at the elevator, weighed, inspected, cleaned, sacked and mixed and then replaced in the railroad cars was subject to property taxes imposed by the state of Illinois, even though none of the grain was disposed of in that state. *Bacon v. Illinois*, 227 U.S. 504, 57 L. Ed. 615, 33 S. Ct. 299 (1913). So it was held, too, that New Jersey could properly tax coal brought in from other states while it was stored there awaiting shipment to ports in other states and foreign countries. Said the court:

> [I]t is manifest that the coal was used to fill anticipated orders, orders not immediately made but, it may be, certain to be made. . . .

It is clear, we repeat, that such trade could only be accommodated through the storage of coal somewhere, and plaintiff in error availed itself of the conditions to put the storage in New Jersey.

The coal, therefore, was not in actual movement through the State; it was at rest in the State, and was to be handled and distributed from there.

*Susquehanna Coal Co. v. Mayor & Council of South Amboy*, 228 U.S. 665, 57 L. Ed. 1015, 33 S. Ct. 712 (1913).

And, a property tax imposed by the state of Louisiana on crude oil brought in interstate and intrastate commerce from the Arkansas and Louisiana oil fields and sent on to a refinery in Texas was upheld because the interruption in Louisiana was for the benefit of the owner. *Gulf Refining Co. v. Phillips,* 11 F.2d 967 (5th Cir.), *cert. denied,* 273 U.S. 697, 71 L. Ed. 845, 47 S. Ct. 93 (1926).

Odom Company does more than interrupt the journey of its stock of merchandise en route to delivery in Alaska. It does all of those things to its stock of liquor that are essential to the operation of a wholesale liquor distributing business in Seattle. After the stock of liquor is removed from transit, and during the interval before it is shipped out again in a new interstate journey, the liquor is an integral part of a local business operation. Thus, the off-loading, on-loading trucking, record keeping and warehousing give the liquor a local situs and renders it subject to local taxation. A local tax on the business of warehousing, even though the goods handled by the warehouse is in interstate commerce, is valid. *Independent Warehouses v. Scheele,* 331 U.S. 70, 91 L. Ed. 1346, 67 S. Ct. 1062 (1947).

One other point should be mentioned: The tax here sought to be imposed is nondiscriminatory; it will not impose a burden on interstate commerce. If, while warehoused in Seattle, the stock of liquor escapes ad valorem taxes there, it will not be taxed elsewhere. When King County assessed the liquor, it was not at the same time subject to personal property taxes in another jurisdiction. It could thus be said of the liquor, "When the account is made up, the stranger from afar is subject to no greater

burdens as a consequence of ownership than the dweller within the gates." *Henneford v. Silas Mason Co.,* 300 U.S. 577, 81 L. Ed. 814, 57 S. Ct. 524 (1937), upholding 2 per cent use tax in state of Washington on goods purchased outside.

*W. J. Lake & Co. v. King County,* 3 Wn.2d 500, 101 P.2d 357 (1940), cited by the court, is, I believe, of doubtful authority; it is, in my view, distinguishable from the present case. In *Lake,* the goods were actually on order from the taxpayer before it procured them out of state for distribution out of state. The taxpayer received the orders from its customers at Seattle, ordered the liquor from out of state, and then filled the orders by transshipping the liquor. Thus, in *Lake,* we have a transshipment in transit of goods on order—all done under the rules and regulations of the Washington State Liquor Control Board providing for transshipment of liquor. That this court regarded the liquor as being simply in process of transshipment is explicitly shown at page 503, saying:

> "Shipments of liquor to be stored in the State of Washington, for transshipment to points beyond the state, must be consigned to the Washington State Liquor Control Board, for the account of the shipper, in care of such public warehouses as are authorized by and bonded to the Washington State Liquor Control Board."

The Washington State Liquor Control Board by regulation thus chose to regard the liquor in *Lake* as being consigned to it and transshipped in the course of interstate commerce.

But the Liquor Board regulation upon which *Lake* in part depended no longer applies. The controlling regulation now in effect, WAC 314-36-020, contemplates not a mere transshipment but rather an extended storage and warehousing of liquor for wholesale distribution and requires— under the police power and in protection of the state's monopoly—that the liquor must be available for inspection and is subject to detailed reporting. Present regulations do not determine one way or the other whether the liquor is in interstate commerce, but are designed to enable the state, under its police power, to keep track of all liquor brought

into the state for sale and distribution outside the state. The regulations thus are in aid of enforcing the state's monopoly in the wholesaling of alcoholic beverages and in collecting liquor taxes and have no effect whatever on the local taxability of stored and warehoused liquor. That Odom Company is forced to comply with these regulations in the course of carrying on its business of importing liquor in foreign commerce or purchasing it out of state for sale and delivery ultimately in Alaska, does not mean that the liquor remains in interstate commerce while it is unloaded, entrucked, detrucked, hauled, stored, warehoused, classified, priced and kept in Seattle until buyers are ultimately found for it in Alaska, and it is again loaded and shipped.

I would, therefore, reverse and direct the trial court to let King County collect the tax.

FINLEY and NEILL, JJ., concur with HALE, J.